

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

No. 06-13-00168-CR

JERRY JOHNSON, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 5th District Court
Bowie County, Texas
Trial Court No. 13F0151-005

Before Morriss, C.J., Carter and Moseley, JJ.
Opinion by Justice Carter

# O P I N I O N

Jerry Johnson was convicted by a jury of aggravated sexual assault of a child[1] and, after pleading true to two enhancement allegations, was sentenced to life imprisonment and fined $10,000.00. On appeal, Johnson claims that he received ineffective assistance of counsel and that his trial was tainted by prosecutorial misconduct.[2] We affirm the judgment of the trial court because (1) allegations of ineffective assistance of counsel were not proven and (2) the complaint of prosecutorial misconduct was not preserved.

## I.    Background

Johnson, the step-grandfather of Tatiana Crawford,[3] lived at the Crawford residence with Tatiana, her older sister, and their mother. While the children's mother was away from home working, Johnson sexually assaulted twelve-year-old Tatiana. Tatiana testified that she witnessed Johnson sexually assault her sister in the same manner, in the same place, and on the same day that she was also sexually assaulted.[4] Later that same night, Tatiana told her sister about Johnson's assault. The sisters discussed Johnson's sexual assault of both girls that day and made a pact not to tell anybody. Prior to the assaults, Johnson made suggestive remarks to

---

[1]*See* TEX. PENAL CODE ANN. § 22.021 (West Supp. 2013).

[2]Johnson also complains that he was subjected to an unauthorized fine. This point of error is moot. On January 13, 2014, the trial court entered an amended nunc pro tunc judgment eliminating the unauthorized fine.

[3]The child victim has been given this pseudonym to protect her identity.

[4]In a consolidated trial, Johnson was also convicted of sexual assault of Tatiana's older sister, Nariyah. Johnson has likewise appealed his conviction in that case. That appeal is the subject of a separate opinion in this Court's cause number 06-13-00169-CR issued of even date herewith.

2

Tatiana when she wore tank tops, stating that he would like to suck on her breasts. Johnson also bought the girls inappropriate gifts, including silky panties, pads, and feminine wash.

Approximately five months after the assault, Tatiana made an outcry to her mother. Approximately one year after the assault, Tatiana started counseling sessions with Megan Shumake, a therapist at the Texarkana Children's Advocacy Center, through which she was diagnosed with post-traumatic stress disorder (PTSD) due to the sexual assault. At trial, the State called Shumake to testify as an expert in the field of PTSD in children. Shumake testified that Tatiana suffered from PTSD caused by sexual assault and opined that children rarely fabricate stories of abuse.

Two of Johnson's three ineffective assistance claims are rooted in counsel's failure to object to Shumake's testimony.

## II.    Ineffective Assistance of Counsel

The Sixth Amendment to the United States Constitution grants an accused the right to have the assistance of counsel for his or her defense, a right that has been interpreted to require the effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 686 (1984). The right to effective assistance of counsel does not mean, however, that counsel must be errorless or perfect. *Robertson v. State*, 187 S.W.3d 475, 483 (Tex. Crim. App. 2006). A conviction resulting from ineffective assistance of counsel is constitutionally infirm. *Strickland*, 466 U.S. at 688.

3

## A.     Standard of Review

Ineffective assistance of counsel claims are evaluated under the two-part test formulated in *Strickland*, requiring a showing of both deficient performance and prejudice. *Id.* at 687; *Thompson v. State*, 9 S.W.3d 808, 812 (Tex. Crim. App. 1999); *Fox v. State*, 175 S.W.3d 475, 485 (Tex. App.—Texarkana 2005, pet. ref'd).  Ineffective assistance of counsel claims must be firmly rooted in the record, with the record itself affirmatively demonstrating the alleged ineffectiveness. *Lopez v. State*, 343 S.W.3d 137, 142–43 (Tex. Crim. App. 2011).  Failure to satisfy either prong of the *Strickland* test is fatal. *Ex parte Martinez*, 195 S.W.3d 713, 730 n.14 (Tex. Crim. App. 2006).  Thus, we need not examine both *Strickland* prongs if one cannot be met. *Strickland*, 466 U.S. at 697.

To prevail on his ineffective assistance claims, Johnson must prove by a preponderance of the evidence that (1) his counsel's representation fell below an objective standard of reasonableness and (2) the deficient performance prejudiced the defense. *Strickland*, 466 U.S. at 687; *Tong v. State*, 25 S.W.3d 707, 712 (Tex. Crim. App. 2000) (en banc).  We indulge a strong presumption that counsel's conduct falls within the wide range of reasonable, professional assistance and that it was motivated by sound trial strategy. *See Jackson v. State*, 877 S.W.2d 768, 771 (Tex. Crim. App. 1994).  "If counsel's reasons for his conduct do not appear in the record and there is at least the possibility that the conduct could have been legitimate trial strategy, we will defer to counsel's decisions and deny relief on an ineffective assistance claim on direct appeal." *Ortiz v. State*, 93 S.W.3d 79, 88–89 (Tex. Crim. App. 2002).  Rarely will a reviewing court be provided the opportunity to make its determination on direct appeal with a

4

record capable of providing an evaluation of the merits of ineffective assistance claims. *Thompson*, 9 S.W.3d at 813. "In the majority of instances, the record on direct appeal is simply undeveloped and cannot adequately reflect" the reasoning of trial counsel. *Id*. at 813–14. Only in the rare case "in which trial counsel's ineffectiveness is apparent from the record" may the appellate court "address and dispose of the claim on direct appeal." *Lopez*, 343 S.W.3d at 143.

Johnson claims that his trial counsel was ineffective because he failed to challenge and exclude testimony that Tatiana's PTSD resulted from sexual abuse, he procured testimony that children rarely fabricate allegations of sexual abuse, and he elicited extraneous-offense evidence during the guilt/innocence phase of the trial.

## B.    Post-Traumatic Stress Disorder

Johnson complains that his counsel was ineffective in failing to challenge and exclude Shumake's testimony that Tatiana suffered from PTSD caused by sexual abuse.[5]  Although

---

[5]On direct examination by the State, the following exchange took place:

> Q.    And based on all your dealings with them, talking to them, talking to the mother, the computerized test, have you been able to determine what has caused the PTSD . . . ?
>
> A.    Yes.  They have both told me.
>
> Q.    Okay.  And what has caused it?
>
> . . . .
>
> [Defense Counsel]:  I'm going to object to hearsay on what she's saying they told them, Judge.
>
> [State]:  It's her clinical diagnosis, Your Honor.  It has to do with why they have PTSD in this case.

5

defense counsel lodged a hearsay objection to the subject testimony, the crux of Johnson's complaint here is different. Johnson complains that Shumake's testimony to the effect that Tatiana's PTSD was caused by sexual abuse was, in essence, inadmissible opinion testimony on Tatiana's truthfulness.[6] *See Schutz v. State*, 957 S.W.2d 52, 59 (Tex. Crim. App. 1997) (expert may not offer direct opinion on truthfulness of child complainant's allegations); *Fuller v. State*, 224 S.W.3d 823, 832 (Tex. App.—Texarkana 2007, no pet.).

In support of his contention, Johnson relies on *Lane v. State*, 257 S.W.3d 22 (Tex. App.—Houston [14th Dist.] 2008, pet. ref'd). In *Lane*, a social worker who counseled the complainant testified that the complainant had PTSD caused by childhood sexual abuse. Lane's trial counsel did not object to this testimony. *Id*. at 25. On appeal, Lane complained that the subject testimony was inadmissible opinion testimony on the complainant's truthfulness and that the failure to object on this basis was ineffective assistance of counsel. *Id*. at 27. The court determined that, because "[the social worker's] testimony she counseled complainant for fourteen weeks and determined [complainant] had been sexually assaulted was direct testimony that the complainant was truthful," the testimony was inadmissible. *Id*. To the extent *Lane* can be read to stand for the proposition that expert testimony regarding sexual abuse as the cause of

THE COURT: Okay. I'll overrule the objection.

THE WITNESS: Sexual abuse.

[6]The State contends counsel's performance was not deficient because evidence that a child victim of sexual abuse suffers from PTSD is admissible as substantive evidence of guilt, citing *Zinger v. State*, 899 S.W.2d 423, 432 (Tex. App.—Austin 1995), *rev'd on other grounds*, 932 S.W.2d 511 (Tex. Crim. App. 1996). *Zinger* was a child sexual abuse case in which a psychologist testified that the victim's symptoms were "consistent with posttraumatic stress disorder resulting from sexual abuse." At trial, Zinger's hearsay objection was overruled in reliance on Rule 803(4) of the Texas Rules of Evidence. In this case, Johnson's complaint centers on counsel's failure to exclude testimony that the complainant was truthful—not that counsel failed to exclude such testimony because it was hearsay.

PTSD is always inadmissible opinion testimony on the complainant's truthfulness, we must respectfully disagree.

Here, Shumake explained that PTSD results from experiencing a traumatic event that has caused major stress. Symptoms of the disorder include hyper-vigilance, arousal, intrusive thoughts, and trouble sleeping. Shumake testified that, by the time of trial, she had counseled Tatiana three times. On Tatiana's first visit, Shumake administered a computerized test designed to determine if Tatiana was experiencing PTSD.[7] A diagram generated by the test indicated that Tatiana was experiencing many symptoms of PTSD, including sleep problems, hyper-vigilance, intrusive thoughts of the abuse, avoidance and withdrawal, nightmares and flashbacks.

In the context of explaining her diagnosis of PTSD, Shumake testified that she believed the disorder was caused by sexual abuse; while this testimony was corroborating evidence that sexual assault had occurred, it has no bearing on the truthfulness of Tatiana's statement that a particular person assaulted her and is, therefore, admissible. This type of evidence is no different than the results of a physical examination of a sexual abuse victim that corroborates that abuse has occurred. It does not point the finger at any particular person. Instead, this type of evidence merely verifies that the child was sexually assaulted. *See Cohn v. State*, 849 S.W.2d 817, 818–19 (Tex. Crim. App. 1993) (although expert may not testify that witness is truthful, expert may testify that child exhibits symptoms consistent with sexual abuse); *Fox*, 175 S.W.3d at 482 (same); *Burns v. State*, 122 S.W.3d 434, 437 (Tex. App.—Houston [1st Dist.] 2003, pet. ref'd) (expert's testimony regarding psychological test results, which suggested complainant answered

---

[7]The test is formally labeled The University of California at Los Angeles Post-Traumatic Stress Disorder Reaction Index.

7

questions in truthful manner, did not constitute impermissible comment on truthfulness); *see Schutz*, 957 S.W.2d at 60 (discussing "'fine but essential'" line between helpful expert testimony and "impermissible comments on credibility").

### C. Testimony that Children Rarely Fabricate Allegations of Sexual Abuse

Johnson next complains that, because his trial counsel elicited Shumake's testimony that false accusations of childhood sexual assault are very rare, counsel was ineffective. An expert is not permitted to give an opinion that the complainant or class of persons to which the complainant belongs (such as child sexual assault victims) is truthful. *Yount*, 872 S.W.2d at 712; *Fuller*, 224 S.W.3d at 832. Instead of experts, jurors must draw "conclusions concerning the credibility of the parties in issue." *Yount*, 872 S.W.2d at 710; *see Brooks v. State*, 323 S.W.3d 893, 899 (Tex. Crim. App. 2010) ("[T]he jury is the *sole* judge of the witnesses' credibility and the weight to be given their testimony.").

On cross-examination, defense counsel asked Shumake:

> Q. Some children make up stories of abuse, do you agree with that?
>
> A. It happens sometimes; rarely, in my experience.

Johnson relies on *Fuller*, 224 S.W.3d at 826, and *Sessums v. State*, 129 S.W.3d 242, 248 (Tex. App.—Texarkana 2004, pet. ref'd), in support of his contention that the failure to object to Shumake's answer as quoted above is ineffective assistance of counsel. In *Fuller*, the State elicited opinions concerning the complainant's truthfulness from four different witnesses, with no objections. *Fuller*, 224 S.W.3d at 833–35. Instead of objecting, on cross-examination, counsel employed a strategy of exploring each witness' belief in the credibility of the

8

complainant. This tactic resulted in only more bolstering. *Id*. at 835. In *Sessums*, the State elicited testimony from four different expert witnesses concerning the complainant's truthfulness, without objection. *Sessums*, 129 S.W.3d at 247. The State emphasized this testimony in closing arguments. *Id*. at 248. We compared this conduct to that discussed in *Miller v. State*, 757 S.W.2d 880, 884 (Tex. App.—Dallas 1988, pet. ref'd), where the court concluded that failing to object to the "'extensive, inadmissible testimony concerning the only real issue at trial—complainant's credibility'[—]was deficient." *Sessums*, 129 S.W.3d at 248 (quoting *Miller*, 757 S.W.2d at 884).

In this case, defense counsel asked a question to which an objectionable response was given. The testimony here was spontaneous on the part of the witness and was not emphasized by the State. Thus, this case is distinguished from *Fuller* and *Sessums*, where extensive testimony was elicited by the State from four different witnesses in each case. Here, the testimony was attributable to a single witness and was spontaneous and brief.

In the face of a silent record, we must presume counsel had a plausible reason for his actions. *Tong*, 25 S.W.3d at 713–14. Counsel could have reasonably concluded that an objection would have served only to emphasize the testimony. *See Alberts v. State*, 302 S.W.3d 495, 506 n.7 (Tex. App.—Texarkana 2009, no pet.). In order to preserve this point of error for appeal, counsel would have to object and receive a favorable ruling. The rules of preservation then require a request that the jury be instructed to disregard the objectionable testimony and the filing of a motion for a mistrial. An objection followed by the steps needed to preserve error

likely would have highlighted Shumake's opinion to the jury. We cannot conclude that counsel's performance fell below an objective standard of reasonableness for failing to object.

### D. Extraneous-Offense Evidence

The defense called Don Hutcheson during its case-in-chief, who testified (1) that he had known Johnson since 2008, (2) that he had personally observed Johnson around children, including his own grandchildren, (3) that Johnson had never done anything inappropriate, and (4) that he would allow Johnson in the presence of his grandchildren. On cross-examination, however, the following exchange took place:

> Q. Well, you've obviously got opinions, or you wouldn't have come out of no where [sic] like the defense said?
>
> A. Ma'am, I came out of no where [sic] because I read it in the newspaper, okay. I've known Jerry for years.
>
> Q. Years, okay.
>
> A. I know what moral caliber he is around my kids.
>
> Q. You know what moral caliber he is?
>
> A. Yes, ma'am.

As a result of this testimony, the trial court ruled that the defense opened the door for the introduction of Johnson's criminal history. On appeal, Johnson does not contest the propriety of this ruling. Instead, he contends counsel was ineffective for opening the door to extraneous-offense evidence that damaged his credibility with the jury.[8] In support of this assertion,

---

[8]After the trial court's ruling, the State continued its cross-examination of Hutcheson:

Q.     . . . Have you heard, sir, that on June 10th, 2002, Jerry Johnson was convicted of theft over 1500 but under 20,000 with prior felony convictions out of Bowie County? Were you aware of that?

A.     No, ma'am.

Q.     Okay. Sir, were you also aware that on that same date he was convicted of another theft with prior convictions out of Bowie County. That's a felony offense, were you aware?

A.     No, ma'am.

Q.     Sir, were you aware that in 2010, April 26, 2010, his third felony conviction came also with theft with prior felony convictions out of Bowie County, Texas? Were you aware?

A.      No.

Q.     Were you aware, sir, that in 2006 in Miller County, he was also convicted of the felony offense theft? Were you aware of that?

A.     No, ma'am.

Q.     Were you aware that on May 24th, 2004, that he was convicted of another felony offense of theft in Bowie County, Texas?

A.     No, ma'am.

Q.     Were you aware that in 1990, in August, this one was in Union County, Arkansas, he was also convicted of theft of property, a felony offense?

A.     No, ma'am.

. . . .

Q.     He was also convicted of possession of cocaine, a felony offense?

A.     No, ma'am.

Q.     He was also convicted of another count of theft of property, a felony offense?

A.     No, ma'am.

Q.     And you are aware, sir, every time you see one of these, that he has done time in the penitentiary?

A.     Well, I see that now.

11

Johnson relies on *Robertson v. State*, 187 S.W.3d 475, 484 (Tex. Crim. App. 2006), and *Garcia v. State*, 308 S.W.3d 62, 68 (Tex. App.—San Antonio 2009, no pet.). Both *Robertson* and *Garcia* can be distinguished from the present case. In *Robertson*, defense counsel—as part of a trial strategy to convince the jury that Robertson was not a liar—elicited testimony from his client on direct examination during the guilt stage of trial that he was already incarcerated on two convictions that were pending on appeal. *Robertson*, 187 S.W.3d at 475–76. The Court of Criminal Appeals determined this was deficient performance under the first prong of *Strickland*. *Strickland*, 466 U.S. at 486. In *Garcia*, defense counsel's performance was deemed deficient when he purposely and repeatedly elicited, on direct examination of Garcia, statements that opened the door to evidence "that set his client up for impeachment by the State," among other things.[9] *Garcia*, 308 S.W.3d at 68. The court concluded that "no reasonable trial strategy"

---

       Q.      Okay. Are you aware, sir, that on February 1st, 1993, that he was convicted of a third-degree felony offense of theft?

       A.      No, ma'am, didn't know him.

[9]While questioning Garcia, defense counsel asked whether Garcia had ever sexually assaulted anybody or whether he had ever been arrested for sexually assaulting anybody. Garcia answered that he had not. In rebuttal, the State called a witness who testified that she had been sexually assaulted by Garcia as a child. The trial court ruled that defense counsel had opened the door to the extraneous evidence on several occasions by inquiring about prior sexual assaults as well as by offering evidence of the defendant's good character. *Garcia*, 308 S.W.3d at 66–67. Counsel also directly elicited testimony that Garcia had previously been arrested for driving while intoxicated (DWI) more than ten years ago, but that he had since stopped drinking. Counsel questioned Garcia about his ownership of handguns in the past, prompting Garcia to testify that he had given up all of his handguns to the sheriff's department fifteen years hence. This prompted questioning on cross-examination that revealed Garcia had handguns in his home within the past fifteen years and that a shooting occurred there during that time-frame. Further questioning also revealed that Garcia had been arrested for DWI within the last ten years, even though he testified that he stopped drinking and had not been arrested in the last ten years. There was no objection to any of this. *Id.* at 67.

12

could explain counsel's actions, especially when his strategy was "based almost entirely on the defendant's credibility versus the complainant's credibility." *Id*. at 68–69.[10]

Unlike *Robertson* and *Garcia*, there is nothing in the record here to suggest that defense counsel purposely elicited extraneous-offense evidence from his client or otherwise intentionally opened the door to such evidence. Before Hutcheson took the stand, defense counsel advised the trial court that Hutcheson was being called for the limited purpose of offering testimony of Johnson's good character for moral and safe relations with small children or young girls. In accordance with this representation, counsel limited his examination of Hutcheson to this subject. When the State cross-examined Hutcheson, Hutcheson testified that he was aware of Johnson's "moral caliber." At that point, the State argued that the defense had opened the door to rebuttal testimony of Johnson's character which entitled the State to offer evidence of Johnson's prior convictions. Defense counsel argued that their evidence was limited to the particular character trait of moral and safe relations with small children, that it did not delve into truth or veracity. Defense counsel further argued that proof of prior theft convictions did not rebut a character trait for moral and safe relations with children and should not be admitted. The trial court announced that the defense offered evidence of the defendant's character and therefore opened the door to "introduction of his criminal history."

We believe defense counsel's decision to call Hutcheson as a limited character witness represented a strategy within the bounds of the objective standard of reasonableness. Rule 404

---

[10]It is worth pointing out that, in this case, the evidence presented at trial amounted to more than a swearing match between Johnson and the complainants. Tatiana testified that she witnessed Johnson sexually assault her sister in the same manner and on the same day that she was sexually assaulted. Tatiana further testified that she and her sister discussed Johnson's sexual assaults on each of them on the same day the assaults occurred.

generally excludes character trait evidence, but allows the defendant to offer evidence of a "pertinent character trait." Likewise, the State may rebut the same. TEX. R. EVID. 404(a)(1)(A). Here, the defense attempted to limit its offer to one pertinent character trait (moral and safe relations with children). Had that been the only evidence offered, there is authority to support counsel's argument to the trial court that Rule 404 only allowed the State to rebut with evidence of that particular character trait. *See Duren v. State*, 87 S.W.3d 719, 730 (Tex. App.—Texarkana 2002, pet. denied) ("Rule 404 (a)(1) only allows the prosecution to rebut the pertinent character trait to which the defense witness's testimony referred.").

The complicating factor is that Hutcheson, in a nonresponsive answer, stated that he knew Johnson's "moral caliber" around children. He was then further asked if he knew Johnson's moral caliber and he answered, "Yes."[11] The question is whether trial counsel's attempt to present specific character trait evidence was conduct that fell below the objective standard of reasonableness.

We do not answer this question by reviewing whether counsel's trial strategy was successful. At the time the evidence was offered, a reasonable argument was available that the State could only rebut the character trait evidence offered by the defendant. On direct examination, defense counsel only inquired into Hutcheson's knowledge of Johnson's character trait for moral and safe relations with children. When Hutcheson volunteered information that indicated Johnson was of good moral character, the argument that the State was limited to

---

[11]Hutcheson did not literally testify that Johnson had good moral character. He stated that he knew his "moral caliber" around children but never explicitly stated what it was. However, his previous testimony was that he would allow Johnson around his granddaughters and never suspected him to be a sexual predator. Based on the totality of Hutcheson's testimony, the clear implication is that Hutcheson regarded Johnson to have a good moral "caliber."

14

rebutting only a particular character trait dissolved. Even after this occurred, counsel took steps to limit any damage incurred from the State's questioning. Defense counsel requested and received a limiting instruction whereby the jury was informed (1) that the extraneous-offense evidence could not be considered for any purpose unless the jury believed, beyond a reasonable doubt, that Johnson committed such other offenses, if any were committed, and (2) that even then such offenses could only be considered to rebut Hutcheson's testimony.

We find that counsel acted within the realm of reasonable trial strategy in attempting to present limited character trait evidence, and we will not second guess this decision through the lens of hindsight. We find no deficient performance by defense counsel.

### III.     Johnson's Claim of Prosecutorial Misconduct Was Not Preserved

During direct examination by the State, Officer Matt Cashatt of the Texarkana Police Department testified that the penalty for a first degree felony is five to ninety-nine years' or life imprisonment and that the penalty for a second degree felony is two to twenty years' imprisonment. Johnson contends that, by eliciting this testimony, among other things, the State engaged in misconduct as it is improper to inform the jury regarding the range of punishment during the guilt/innocence phase of the trial. *See McClure v. State*, 544 S.W.2d 390, 393 (Tex. Crim. App. 1976).

The State contends that any complaint regarding prosecutorial misconduct has not been preserved for our review. To preserve a prosecutorial misconduct complaint, a defendant must generally make a timely and specific objection, request an instruction to disregard the matter improperly placed before the jury, and move for a mistrial. *Penry v. State*, 903 S.W.2d 715, 764

15

(Tex. Crim. App. 1995) (per curiam); *see* TEX. R. APP. P. 33.1(a). At trial, Johnson objected on the basis of relevance when the subject was initially broached during Cashatt's testimony. The trial court overruled the objection and gave Johnson a running objection. Johnson now complains that the State improperly elicited the subject testimony and argued punishment during closing argument. However, Johnson failed to object on the basis of prosecutorial misconduct.

While tacitly acknowledging the failure to object to prosecutorial misconduct, Johnson maintains, in reliance on *Rogers v. State*, 725 S.W.2d 350 (Tex. App.—Houston [1st Dist.] 1987, no pet.), that preservation was not required. *Rogers* involved flagrant and repeated misconduct by the prosecutor who repeatedly made side-bar remarks and suggested inflammatory facts which lacked evidentiary support while cross-examining the defendant and his character witnesses. *Id*. at 358–61. The court concluded that the prosecutor acted in bad faith and that her behavior "could serve no purpose other than to inflame and prejudice the minds of the jurors." *Id*. at 360. Based on these facts, Rogers was able to raise prosecutorial misconduct as a point of error on appeal, even though he failed to preserve the point of error:

> Where there is serious and continuing prosecutorial misconduct that undermines the reliability of the fact[-]finding process or, even worse, transforms the trial into a farce and mockery of justice, as occurred here, resulting in deprivation of fundamental fairness and due process of law, the defendant is entitled to a new trial even though few objections have been perfected.

*Id*. at 359–60.

Johnson claims this case likewise involves pervasive prosecutorial misconduct because the State engaged in "improper gamesmanship by intentionally misleading the jury as to the appropriate range of punishment applicable to Appellant's case in the event of conviction on

16

either indictment." To place this assertion in perspective, it is important to understand the background relative to the reported time of the assaults. It was initially reported by each of the complainants that the assaults took place in May 2012. At trial, however, both complainants agreed the assaults took place in July 2012. Because the older sister turned fourteen in June 2012, the charge as indicted was for sexual assault of a minor (as opposed to aggravated sexual assault of a minor). Before Cashatt was able to explain to the jury how Johnson would benefit from this change, defense counsel objected to the relevance of this inquiry.

In discussing this objection in a hearing outside the presence of the jury, the State argued that testimony to the effect that Johnson would receive a benefit from the change in offense dates was necessary to rebut the defensive theory of fabrication. The State further argued that, if indeed the stories were bogus, there would be no reason for the complainants to indicate the assaults actually occurred two months after the time they initially told the police the assaults happened.

The trial court determined that the punishment ranges of the charged offenses were "relevant to explain -- to give the jury consideration as to why the State may have alleged July as opposed to May."[12] This ruling is not challenged on appeal. Instead, Johnson claims that the State engaged in improper gamesmanship by intentionally misleading the jury as to the appropriate range of punishment applicable to his case in the event of a conviction on either indictment. In other words, if Johnson was convicted on either indictment, he could face a minimum punishment of twenty-five years to life imprisonment based on two enhancements

_____

[12]Based on this ruling, the State elicited testimony from Cashatt to the effect that the change in the offense date benefitted Johnson. The State also argued, in closing, that the change in the offense date benefitted Johnson.

(assuming such were proven).[13]   However, at the time the State informed the jury of the applicable punishment ranges, Johnson's punishment was not yet enhanced.  Further, the State explained the full range of punishment for each of the offenses and enhancements during voir dire.

We cannot say, especially in light of the trial court's decision to admit punishment range evidence, that this conduct was the sort of flagrant repeated misconduct at issue in *Rogers* such that it deprived Johnson of fundamental fairness or due process of law.  That being the case, Johnson was required to preserve any perceived error regarding prosecutorial misconduct by making a timely and specific objection on that basis.  *See Penry*, 903 S.W.2d at 764; *see also* TEX. R. APP. P. 33.1(a).  Because he failed to do so, this point of error has not been preserved.

## IV.     Conclusion

We affirm the judgment of the trial court.


Jack Carter
Justice


Date Submitted:      March 19, 2014
Date Decided:        May 15, 2014

Publish

---

[13]Prior to trial, the State filed notice of its intent to seek enhancement of Johnson's punishment pursuant to Section 12.42(d) of the Texas Code of Criminal Procedure.  The State's notice alleged that Johnson had twice been finally convicted of felony offenses.

18