

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

No. 06-15-00072-CR

JAMES JOSEPH WATTS, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 354th District Court
Hunt County, Texas
Trial Court No. 22,781

Before Morriss, C.J., Moseley and Burgess, JJ.
Memorandum Opinion by Justice Moseley

Pursuant to a negotiated plea agreement, James Joseph Watts pled guilty on August 5, 2005, to aggravated sexual assault of a child younger than fourteen years of age. Pursuant to that plea agreement, the trial court deferred a finding of guilt and placed Watts on community supervision for ten years. During this ten-year period, the State filed three motions for final adjudication of guilt, but did not pursue any to a hearing; however, when a fourth such motion was filed in December 2014, it was pursued to a hearing. Although the State originally alleged that Watts had violated seven of the terms of his deferred adjudication community supervision, it abandoned one of its allegations. After a hearing, the trial court found the remaining six alleged violations "true," revoked Watts' community supervision, adjudged him guilty of the underlying offense, and sentenced him to twenty years' imprisonment. On appeal from the judgment adjudicating his guilt and imposing his sentence, Watts argues that his counsel failed to render effective assistance, citing the failure of trial counsel to call available witnesses to testify in his defense.

In order to prevail on a claim of ineffective assistance of counsel, the defendant must satisfy the two-pronged test set forth in *Strickland v. Washington*, 466 U.S. 668, 687–88 (1984). *See Ex parte Imoudu*, 284 S.W.3d 866, 869 (Tex. Crim. App. 2009). The first prong requires a showing that counsel's performance fell below an objective standard of reasonableness. *Strickland*, 466 U.S. at 688. This requirement can be difficult to meet since there is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id*. at 689. "This measure of deference, however, must not be watered down into a disguised form of

acquiescence." *Profitt v. Waldron*, 831 F.2d 1245, 1248 (5th Cir. 1987) (finding ineffective assistance where counsel failed to request medical records and relied on court-appointed competency examination when he knew client had escaped from mental institution).

The second *Strickland* prong, sometimes referred to as "the prejudice prong," requires a showing that, but for counsel's unprofessional error, there is a reasonable probability that the result of the proceeding would have been different. *Strickland*, 466 U.S. at 694. "A reasonable probability" is defined as "a probability sufficient to undermine confidence in the outcome." *Id*. Thus, in order to establish prejudice, a defendant must prove that counsel's errors, judged by the totality of the representation, denied him a fair trial. *Id.* at 687, 690. Merely showing that the errors had some conceivable effect on the proceeding's outcome is insufficient. *Id.* at 693.

"A *Strickland* claim must be 'firmly founded in the record,' and 'the record must affirmatively demonstrate' the meritorious nature of the claim." *Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005) (quoting *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999)); *see Lopez v. State*, 343 S.W.3d 137, 142–43 (Tex. Crim. App. 2011). "Failure to satisfy either prong of the *Strickland* test is fatal." *Johnson v. State*, 432 S.W.3d 552, 555 (Tex. App.—Texarkana 2014, pet. ref'd) (citing *Ex parte Martinez*, 195 S.W.3d 713, 730 n.14 (Tex. Crim. App. 2006)). "Thus, we need not examine both *Strickland* prongs if one cannot be met." *Id*.

Watts claims that his trial counsel, Jerry W. Card, was ineffective because he failed to subpoena and call Dr. Anna Shursen, Kayla Ashley, Edward Watts, Victor Harris, Rhonda Wooten, and Cynthia Mauldin as witnesses in his behalf.[1]

In its motion to adjudicate, the State alleged, in part, that Watts failed to attend and participate in a sex-offender treatment program until he was successfully discharged as was required under the terms and conditions of his deferred adjudication community supervision. He was discharged from the program twice due to his noncompliance with its rules. One of those discharges was due to his "use of pornography on a cell phone," and the other was for the two-fold reason of his failure of candor while taking a polygraph examination and for his unauthorized contact with one of his minor children. However, at the time of the adjudication hearing, he had been readmitted to the program, and Shursen was his counselor. During the hearing on Watts' motion for a new trial, Card testified that although he had spoken with Watts about possibly calling Shursen, the thing he would seek to establish by that testimony was that Watts had been readmitted to the treatment program. However, during the hearing, one of the State's witnesses testified regarding Watts' current participation in the program, rendering Shursen's testimony redundant. Watts did not ask Card why Shursen did not testify at the hearing as to other matters.

At the motion-for-new-trial hearing, Card testified that he did not recognize the names of either Ashley or Harris. The State asked Card whether Watts had asked him to call either of those persons as trial witnesses, and Card responded, "No. No, it's not in my notes." During the

---

[1]Watts' brief appears to challenge Card's effectiveness during both the adjudication hearing and the punishment hearing, but we limit our examination to the adjudication hearing because that was the sole challenge raised during the hearing on Watts' motion for a new trial.

adjudication hearing, Watts also failed to ask Card why neither Ashley nor Harris was present for the hearing.

Although Watts asked Card to call his brother, Edward Watts (Edward), to testify at the hearing, Watts failed to provide Card with Edward's contact information. Card testified that despite Watts' agreement to text him the contact information, Card "never got a number or anything [from Watts] to be able to get in touch with [Edward]." During the adjudication hearing, Watts failed to ask Card why Edward was not present to testify.

Watts testified that he spoke with Card about calling his fiancé, Wooten, to testify, but claimed Card told him that because Wooten was facing charges related to the actions upon which the State sought Watts' adjudication, whether Wooten testified would be "up to her attorney." Similarly, despite speaking with counsel about calling his mother-in-law, Mauldin, to testify, "her attorney said that she couldn't be called as a witness."

In summary, Card made a strategic decision not to call Shursen to testify because her expected testimony that Watts had been readmitted to the sex-offender treatment program would have simply been a repeat of testimony provided by the State. Card had no record or recollection that Watts asked him to call either Ashley or Harris to testify. Watts failed to provide Card with the means by which he could successfully contact Edward. Further, since both Wooten and Mauldin faced charges of a nature that would impair their ability to testify in this case, their usefulness as witnesses would be dubious. In light of the testimony, we find that Watts has failed to show by a preponderance of the evidence that his counsel's failure to call the named witnesses constituted ineffective assistance. *See Strickland*, 466 U.S. at 688; *see also Tong v. State*, 25

S.W.3d 707, 712 (Tex. Crim. App. 2000). As Watts has failed to satisfy the first prong of *Strickland*, we overrule this point of error. *See Johnson*, 432 S.W.3d at 555.

We affirm the trial court's judgment.


                                    Bailey C. Moseley
                                    Justice

.

Date Submitted:     September 29, 2015
Date Decided:       October 8, 2015

Do Not Publish