

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

---

No. 06-16-00024-CR

---

MICHAEL DUANE NETTLES, Appellant

V.

THE STATE OF TEXAS, Appellee

---

On Appeal from the 71st District Court
Harrison County, Texas
Trial Court No. 15-0126X

---

Before Morriss, C.J., Moseley and Burgess, JJ.
Memorandum Opinion by Chief Justice Morriss

# MEMORANDUM OPINION

Michael Duane Nettles—convicted by a jury of livestock theft[1] based, in part, on a video-recorded statement he made to officers—asserts on appeal that he was denied effective assistance of counsel because his trial attorney failed to seek suppression of that statement on the basis that it was coerced. Because we find no deficiency in counsel's performance in this regard,[2] we affirm the judgment of the trial court.

A few days after twelve head of cattle, several pieces of tack, and some tools were taken from a ranch in Harrison County, some of the cattle were found on a nearby ranch where Nettles was employed. That discovery led, initially, to an investigation of rancher Stacie Soape and, soon, to the sheriff's department interview of Nettles.

Nettles came, at law enforcement's invitation, to the Harrison County Sheriff's Office where he was interviewed by Deputy Brandon Fletcher and Special Ranger Larry Hand.[3] In the interview, Nettles admitted being with Soape and a third person on the night of the thefts, but claimed he participated only in the theft of certain other items, specifically, the copper leads to a welder. Nettles insisted that he had no foreknowledge of, and did not participate in, the theft of the cattle. He admitted being with the other two as they moved or released the cattle into a pen at

---

[1]*See* TEX. PENAL CODE ANN. § 31.03 (West Supp. 2016). Nettles was sentenced to thirty-five years' imprisonment.

[2]While counsel did not object to Nettles' video-recorded statement based on coercion, objections were made on a number of other grounds, including hearsay, comments on the weight of the evidence, lack of right to cross-examine, relevance, confrontation, and speculation. All such objections were overruled by the trial court.

[3]Hand was a Special Ranger with the Texas Southwestern Cattle Raisers Association; he was a licensed law enforcement officer.

Soape's ranch. This appeal is focused on whether counsel should have objected to the use of the statement on the basis of its being coerced.

"Ineffective assistance of counsel claims are evaluated under the two-part test formulated in *Strickland*, requiring a showing of both deficient performance and prejudice." *Johnson v. State*, 432 S.W.3d 552, 555 (Tex. App.—Texarkana 2014, pet. ref'd) (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *Thompson v. State*, 9 S.W.3d 808, 812 (Tex. Crim. App. 1999)). "To prevail on his ineffective assistance claims, [Nettles] must prove by a preponderance of the evidence that (1) his counsel's representation fell below an objective standard of reasonableness and (2) the deficient performance prejudiced the defense." *See id.* (citing *Strickland*, 466 U.S. at 687; *Tong v. State*, 25 S.W.3d 707, 712 (Tex. Crim. App. 2000)). "A defendant's failure to satisfy one prong of the *Strickland* test is fatal." *Ex parte Martinez*, 195 S.W.3d 713, 730 n.14 (Tex. Crim. App. 2006). "Thus, we need not examine both *Strickland* prongs if one cannot be met." *Johnson*, 432 S.W.3d at 555 (citing *Strickland*, 466 U.S. at 697).

Nettles asserts that his trial attorney should have sought to suppress the statement, because it "explicitly depicted the coercive police conduct offensive to the Due Process Clause of the Constitution of the United States" and Article 38.22 of the Texas Code of Criminal Procedure. Hence, argues Nettles, his statement was involuntarily given. Where an appellant alleges ineffective assistance of counsel based on failure to move to suppress evidence, he or she is "obliged to prove that a motion to suppress would have been granted." *Jackson v. State*, 973 S.W.2d 954, 957 (Tex. Crim. App. 1998). So we must decide whether Nettles has met that threshold.

3

We have watched the video-recorded interview, which lasts a little over an hour. We can find nothing coercive in it. The recording reveals no loud, threatening, or bullying conduct by either of the two investigators who interviewed Nettles. Fletcher led most of the discussion. He maintained a polite, even-tempered calm, throughout. He introduced himself to Nettles, explained Nettles' *Miranda*[4] warnings, and obtained Nettles' signature.[5] Nettles expressed no confusion or reluctance to sign. After Fletcher read the warnings to Nettles, he slid the document across the desk for Nettles to sign and asked him if he understood what had been read to him. Nettles said, "I understand everything." What followed was an even, calm, discussion and questioning. Fletcher explained that he had spoken to Soape and one other suspect and suggested that they had implicated Nettles in the cattle theft being investigated. Fletcher politely and professionally explained that Nettles could help himself by being honest with the lawmen. Fletcher told Nettles that Fletcher had a strong relationship with the district attorney, who would be receptive if Fletcher related that Nettles co-operated with investigators. Nettles insisted that he had no foreknowledge of, or involvement in, the theft of livestock; rather, he maintained his involvement was limited to stealing welder leads to sell the copper in them.

On appeal, Nettles complains of five specific instances of what he characterizes as coercion. We address each in turn.

---

[4]*See Miranda v. Arizona*, 384 U.S. 436 (1966).

[5]Nettles came to the sheriff's office on his own and was allowed to leave following the interview. This occurred even though he was informed that law enforcement had enough evidence to secure an arrest warrant for him that day. Throughout the interview, Fletcher assured Nettles that he would be allowed to leave that afternoon, even if an arrest might follow.

Early in the interview, Fletcher told Nettles, "Everything's on the table, and by everything, I mean charges and all. Cooperation may get you a different charge. Non-cooperation may get you a different charge." Fletcher said that to Nettles in a firm, professional, conversational tone. Following that, Fletcher told Nettles, "You know how it works," and then said "I don't have to explain it to you." None of that was said in a threatening or menacing manner. In fact, based on the conduct surrounding the *Miranda* warnings and Fletcher's later telling Nettles that he had the most to lose of the known suspects, it appears that Fletcher knew that this was not Nettles' first encounter with law enforcement.[6] We find nothing coercive in Fletcher's statements to Nettles and no basis on which suppression could be successfully argued.

Fletcher also told Nettles that he "would probably rather take a copper theft than a cattle theft," since copper theft is a state jail felony and livestock theft is a third degree felony. This, too, assumes Nettles' familiarity with the criminal justice system and that there was a possible choice of punishment ranges before him. Nothing in the tone or conduct of Fletcher's statement was coercive or threatening.

According to Nettles' brief, Fletcher also suggested to Nettles that he had a choice between being a witness or a suspect. Actually, speaking slowly and carefully, Fletcher asked Nettles if he would rather be a witness or a suspect. Nettles firmly opted to be a witness. Fletcher told Nettles that he must know something to be a witness and that Fletcher wanted to know what Nettles knew. Fletcher added that he did not believe Nettles was telling the truth and that Nettles stood to lose

---

[6]Following his conviction, Nettles pled true to having been previously convicted of burglary of a habitation and unauthorized use of a motor vehicle; these convictions were used to enhance the available range of punishment. Another conviction for burglary of a habitation was also proven.

5

several years of his life to incarceration. We see nothing coercive or threatening here. Fletcher tried to reason with Nettles. In fact, Nettles is the one who became progressively louder in his protestations. Fletcher advised Nettles to "ease that down," referring to Nettles' tone of voice.

Next Nettles complains that Fletcher told him that he was offering an "excellent deal today," implying "that if he d[id] not confess that he w[ould] be put in jail immediately." The record is a bit different. In fact, what Fletcher said is that he was "offering . . . an excellent deal today, a go home deal today." Fletcher immediately added that he made no promise that Nettles would not subsequently be arrested. Rather, Fletcher repeated to Nettles that he would be allowed to leave the sheriff's office after the interview. In fact, four minutes before that discussion, Fletcher stressed that if Nettles told the truth, he would be allowed to go home. Fletcher also stated that Nettles would be allowed to go home even if he confessed.

Finally, Nettles points to Fletcher's statements that Nettles would be "praying for a lesser charge anyway and I can make that happen" and "my D.A. works with me like clockwork." This followed several requests from Fletcher for Nettles to cooperate and tell the truth. Fletcher told Nettles that his statements did not match other information gleaned in the investigation and that enough evidence had been acquired to get a warrant for Nettles' arrest. In context, we do not see this as threatening or coercive. During the interview, Nettles equivocated and altered his version of his degree of involvement, gradually admitting his presence at the scene, first denying taking anything then admitting taking welding leads, and admitting knowing the cattle was stolen and being with Soape and the other party the night of the theft.

6

"When determining whether a confession should have been excluded for violation of the Constitution of the United States, we must decide whether the confession was voluntary or coerced." *Moseley v. State*, 223 S.W.3d 593, 597 (Tex. App.—Amarillo 2007), *aff'd*, 252 S.W.3d 398 (Tex. Crim. App. 2008). "Absent [coercive] police conduct causally related to the confession, there is simply no basis for concluding that any state actor has deprived a criminal defendant of due process of law." *Colorado v. Connelly*, 479 U.S. 157, 164 (1986). From our view of the whole interview, we see nothing that can be said to be overbearing or threatening to Nettles. Nothing in the officers' conduct appears to "overbear the will of the accused and bring about a confession not freely determined." *Green v. State*, 934 S.W.2d 92, 100 (1996).

Since Nettles has failed to show that a motion to suppress would have been granted, he has failed to satisfy the first *Strickland* prong. We overrule his claim of ineffective assistance of counsel.

We affirm the trial court's judgment.


Josh R. Morriss, III
Chief Justice

Date Submitted:      August 10, 2016
Date Decided:        August 24, 2016

Do Not Publish

7