

# NUMBER 13-22-00042-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

---

**JOSEPH GUTIERREZ A/K/A
JOSEPH RUBEN GUTIERREZ,**                                            **Appellant,**

**v.**

**THE STATE OF TEXAS,**                                            **Appellee.**

---

### On appeal from the 23rd District Court
### of Wharton County, Texas.

---

# MEMORANDUM OPINION

**Before Justices Tijerina, Silva, and Peña
Memorandum Opinion by Justice Tijerina**

Appellant Joseph Gutierrez a/k/a Joseph Ruben Gutierrez appeals his conviction of attempted capital murder. *See* TEX. PENAL CODE ANN. §§ 15.01, 19.03. By three issues, Gutierrez argues that: (1) his guilty plea is invalid because there was no meeting of the minds; (2) the sentence must be "redone as [Gutierrez] is entitled to an individualized

sentence within legal parameters"; and (3) his trial counsel rendered ineffective assistance at the punishment phase. We affirm.

## I. BACKGROUND

On October 7, 2021, Gutierrez was indicted on three counts of attempted capital murder of a peace officer; one count aggravated assault of a deadly weapon; and four counts of possession of a controlled substance with intent to deliver—for a total of eight counts. *See* TEX. PENAL CODE ANN. §§ 15.01 ("Criminal Attempt"); 19.03 ("Capital Murder"), 22.02(b)(1) ("Aggravated Assault"); TEX. HEALTH & SAFETY CODE ANN. § 481.112. On October 12, 2021, the State enhanced the three counts of attempted capital murder by alleging a deadly weapon. Shortly thereafter, the State dismissed the charge of aggravated assault with a deadly weapon and abandoned "with intent to deliver" on the possession charges. Gutierrez filed a motion for the trial court to assess deferred adjudication.

On November 12, 2021, at the plea hearing, the trial court ascertained that Gutierrez was mentally competent. Gutierrez affirmed he understood that he was charged with "attempted capital murder," and the State informed the trial court that as part of a plea agreement, it would "set aside everything but Count 1 after punishment occurs." The State added that it filed notice of a deadly weapon finding.

Gutierrez confirmed that he understood the charges. The trial court inquired about Gutierrez's trial counsel assistance in the case, whether counsel was effective, and whether counsel answered all of Gutierrez's questions. Gutierrez repeatedly responded, "Yes, sir." The trial court stated:

2

[I]f this plea agreement goes through, the only plea—only count that will be pending against you is attempted capital murder of a peace officer or fireman. So, that's what we'd be proceeding on . . . it's my understanding that the State never made any concrete offer of a sentence to you, in other words, probation or time in prison. So, this would be what we call an open plea. That means you're going to plead guilty today[,] and I'm going to find you guilty, if we go through with this. So, you'll be convicted. But then we're going to recess and next Wednesday we're going to hear evidence in a punishment phase and then the probation department does what's called a Presentence Investigation Report. And that's going to be given to me in, more or less, six weeks, somewhere around that; and then we come back[,] and I determine what the sentence is and sentence you.

Gutierrez then pleaded guilty to count one of attempted capital murder with a deadly weapon. *See id.* §§ 15.01, 19.03. Gutierrez expressed that he was entering the plea freely and voluntarily, and that he was not promised anything to plead guilty "other than the plea agreement, which is indefinite as to the sentence." The trial court explained that Gutierrez was "also giving up the right to appeal to a higher court except as to the sentence" and that Gutierrez would not be able to appeal whether he was guilty or not guilty. The State entered the written plea admonishments and Gutierrez's judicial confession into the record. The trial court accepted Gutierrez's guilty plea.

One week later, the trial court heard evidence on the punishment phase of trial. At the conclusion of the hearing, the trial court adjudicated Gutierrez guilty and sentenced Gutierrez to thirty-eight years' imprisonment. This appeal followed.

## II.    VOLUNTARINESS OF GUILTY PLEA

By his first issue, Gutierrez argues that "[t]here was no meeting of the minds when people attempt to bargain for an impossibility." According to Gutierrez, his trial counsel, the State, and the trial court "all thought that a potential for deferred adjudication community supervision existed," but "they were wrong" because deferred adjudication

3

cannot be given in a case of attempted capital murder with a deadly weapon. Therefore, this renders Gutierrez's plea "involuntary." The State responds, asserting that there was a "meeting of the minds when the plea was entered" to the trial court because "a trial court has authority to place a defendant on deferred adjudication for the offense of attempted capital murder." However, we need not address this issue as discussed below. *See* TEX. R. APP. P. 47.1.

Where the defendant in a criminal action has pleaded guilty and the punishment assessed is not greater than that recommended by the prosecutor, the appellant must have permission of the trial court to appeal the case, except on those matters that have been raised by written motion prior to trial. *See* TEX. R. APP P. 25.2(a)(2)(A), (B); *Cooper v. State*, 45 S.W.3d 77, 82–83 (Tex. Crim. App. 2001) (en banc); *Escochea v. State*, 139 S.W.3d 67, 75 (Tex. App.—Corpus Christi–Edinburg 2004, no pet.). The facts before us are similar to *Gabriel*, and we find *Gabriel* persuasive. *See Gabriel v. State*, Nos. 13-12-00366-CR, 13-12-00367-CR, 2012 WL 8013980, at *1 (Tex. App—Corpus Christi–Edinburg Dec. 28, 2012, no pet.) (mem. op., not designated for publication). In *Gabriel*, appellant pleaded guilty to possession of a controlled substance, and the trial court sentenced defendant to twenty-five years' imprisonment. *See id.* Appellant contended the plea was involuntary, but this Court held that we had "no jurisdiction to address appellant's complaint that his guilty pleas were involuntary" because the trial court did not grant the appellant the right to appeal after entering a plea agreement. *Id.*

Here, Gutierrez pleaded guilty to attempted capital murder, the punishment assessed was not greater than that recommended by the State, and the trial court did not

4

grant Gutierrez the right to appeal any issues that were not raised by written motion prior to his guilty plea. *See* TEX. R. APP P. 25.2.(a)(2)(A), (B); *Cooper*, 45 S.W.3d at 82–83; *see also Gabriel*, 2012 WL 8013980, at *1. Instead, the trial court's certification expressly states that it was "a plea-bargain case, and the defendant has NO RIGHT OF APPEAL as to guilt" and may *only* appeal the "punishment phase." *See* TEX. R. APP P. 25.2.(a)(2)(A), (B). Because Gutierrez waived his right to appeal the guilt and innocence phase of trial, we decline to address Gutierrez's complaint that his guilty plea was involuntary due to his alleged mistaken belief that he may be placed on deferred adjudication. *See Cooper*, 45 S.W.3d at 81 ("When we actually consider the issue of whether voluntariness of a guilty plea may be raised on appeal from a plea-bargained, felony conviction, we find that the answer must be that it may not."); *Escochea*, 139 S.W.3d at 84 (recognizing that the appellant "waived any appeal of the voluntariness of his plea when he pleaded guilty to a felony pursuant to an agreed punishment recommendation"). We overrule his first issue.

### III.    SENTENCE

By his second issue, Gutierrez argues that his sentence "must be redone as [he] is entitled to an individualized sentence within legal parameters." Gutierrez states that "the trial court must be given the opportunity to either correct its sentence or give the reasons it would stay at the same sentence" because "there appears to have been a misunderstanding as to the true possible sentence." We disagree with Gutierrez.

"A sentence outside the maximum or minimum range of punishment is unauthorized by law and therefore illegal." *Escochea*, 139 S.W.3d at 80 (citing *Mizell v.*

5

*State*, 119 S.W.3d 804, 806 (Tex. Crim. App. 2003)). The range of punishment for attempted capital murder is between life imprisonment or five to ninety-nine years imprisonment. *See* TEX. PENAL CODE ANN. § 12.32(a) (providing that the range of punishment for a first-degree felony shall be punished by imprisonment for life or for any term of not more than 99 years or less than five years). Here, the trial court sentenced Gutierrez to thirty-eight years' imprisonment, which is within the legal parameters—contrary to Gutierrez's assertion on appeal. Gutierrez has provided no authority and we have found none which dictates that the trial court "give the reasons it would stay at the same sentence," and we disagree with Gutierrez's assertion that the trial court misunderstood "the true possible sentence" when the trial court sentenced Gutierrez within the guidelines for a first-degree felony. We overrule his second issue.

### IV. INEFFECTIVE ASSISTANCE OF COUNSEL

By his third issue, Gutierrez argues that his trial counsel was ineffective at the punishment phase.

### A. Evidence

Officer Kendrick Matula from the El Campo Police Department (ECPD) testified that on June 13, 2021, he was on patrol when he received a call-in reference to a rolling disturbance between people in a vehicle. His body camera video was admitted into evidence. In the video, Officer Matula is seen chasing a white Kia, where Gutierrez was a passenger, with lights and sirens. Suddenly, the Kia makes an abrupt stop, Gutierrez exits from the passenger side, stands and faces Officer Matula and his unit, and fires two shots at Officer Matula as Officer Matula attempts to exit his unit. Officer Matula then

6

ducks down while his windshield shatters. Officer Matula exits his unit and runs away from the fire while holding his weapon in Gutierrez's direction.

Officer Matula testified that he felt "some force strike [his] left shoulder." At this point, his unit stayed in drive because he was unable to shift it to park in haste to leave the scene. Officer Matula's unit is seen moving unoccupied down the road with the door ajar. Officer Matula ran back to his vehicle and alerted dispatch, "Shots fired!" He stated he was in fear for life at this point.

When Officer Matula continued the pursuit, he arrived at a nearby intersection where the Kia was now crashed into a ditch. Officer Matula and ECPD Officer C.A. Guynes yelled at Gutierrez and the driver to come out with their hands up. Gutierrez and the driver fled into a nearby field. Eventually, the officers apprehended Gutierrez and the driver. When Officer Matula handcuffed Gutierrez, he instructed Gutierrez not to move; Officer Matula explained he was concerned Gutierrez was going to shoot at him again or at another officer.

Officer Matula recovered Gutierrez's loaded firearm along with a safe, which he located on the front passenger floorboard. EMS evaluated Officer Matula, and they discovered glass on his face. Officer Matula further testified that when he arrived home, he noticed several red marks on his left shoulder. He explained that this incident has affected him because it has given him nightmares, he does not like being left alone, and he is currently undergoing counseling.

In Officer Guynes's dash cam video, the trial court was able to see the Kia attempting to run Officer Guynes and his unit off the road as the Kia swerved directly into

7

his path. Officer Guynes drove off the road to avoid a collision. As Officer Guynes continued the pursuit, the Kia crashed into a ditch, and Gutierrez and the driver ran in a nearby field. Similar events unfolded in ECPD Officer G. Perales's body cam video. Officer Perales was on the same chase when he was suddenly run off the road and drove over a ditch and into a yard, causing his unit to stop. He then described the location of the suspects, and stated, "He just ran me off the road."

Sergeant Ryan Schaer testified that he interviewed Gutierrez. During the interview, Gutierrez was "emotionless," "[v]ery matter of fact," and "just telling a story." Gutierrez admitted to using marijuana and Xanax. Gutierrez told Sergeant Schaer that he took his ex-girlfriend's car, Ashley, and he saw that she was chasing him. He then picked up his cousin and switched seats to the passenger side. Gutierrez admitted he then fired three rounds into Ashley's car. Once Gutierrez saw Officer Matula coming towards him in his unit, Gutierrez told his cousin to stop the vehicle, Gutierrez exited the vehicle, and he fired two rounds directly at Officer Matula "to get away."

Sergeant Schaer obtained a search warrant for the contents inside the safe due to an "incredible" odor of marijuana permeating from the safe. Inside the safe, Sergeant Schaer recovered eight grams of methamphetamine, six bags of marijuana, eight THC cartridges, one bottle of Xanax, plastic bags, twelve assorted packages, a digital scale, a spoon, a crystalline substance, seventeen packages of THC edibles, and a cell phone.

Priscilla Shorter, Officer Matula's mother, testified that she fell to her knees when she was informed that Officer Matula was involved in a shooting. At that time, she was unaware Officer Matula had not been injured. When she found out that her son was okay,

she thanked God, and told him she loved him.

Gutierrez's grandfather, Jesus Gutierrez, testified on behalf of his grandson. He stated that Gutierrez was "always a good boy," and he "never had any problems with him." Jesus stated he has always been very strict with Gutierrez and never lets him have freedom. According to Jesus, Ashley took advantage of Gutierrez, gave him drugs, and convinced him to drop out of school. Jesus explained that Gutierrez was not in his right mind when this incident occurred because it was very uncharacteristic of Gutierrez. Prior to the incident, Jesus was with Gutierrez at a convenience store, and Jesus noticed that Gutierrez was not in his right mind because he could not speak properly. Jesus instructed Gutierrez to go straight home, but instead these incidents transpired. Jesus apologized to the trial court, explained that Gutierrez was a "good boy but he got involved with the wrong people."

Gutierrez apologized to Officer Matula for his actions and requested that the trial court place him on community supervision in light of his youth and to give him an opportunity to be rehabilitated because no one was seriously injured over his "big mistake." The State countered that this was not a big mistake but a "major mistake," and if Officer Matula did not "have the reflexes that he did, [the State] could have been here on a capital murder" seeking the death penalty. The State further argued that Gutierrez's extensive culpability warranted a more severe sentence, namely: shooting at Ashley's vehicle with three civilians in it, getting involved in a high-speed chase further endangering the members of the El Campo Community, getting out of the Kia while pointing the gun directly at Officer Matula and shooting at him, and then swerving to cause

9

other officers to veer off the road.

The trial court explained:

I agree with most of what both counsel said, and I weighed all that in making a decision. [Gutierrez] has thrown away his life, regardless of what the sentence is; but he tried to throw away many more lives than that.

[Officer Matula] directly faced losing his life; but his family, his friends, all his colleagues—I know he's a very well-liked person and respected, and he made a big impression on me.

And just by coincidence, I met [Gutierrez']s little brothers out one [sic] of the first—the day we had the guilty plea and they're really innocent, cute little kids[,] and I hope somebody keeps them on a path other than where [Gutierrez] is going.

And as I said a few minutes ago, I already telegraphed what my sentence is going to be[,] and I took a lot of factors into account in determining what it is but a lot of it was, of course, the factors in this case and then the history of the different sentences that I've handed out that were my decision over the years and the result I came up with is 38 years.

So, Mr. Gutierrez, having ple[a]d[ed] guilty and now going to be found guilty and a conviction entered, I do assess your punishment at and sentence you to serve 38 years in the Institutional Division of the Texas Department of Criminal Justice.

## B.    Applicable Law

Ineffective assistance of counsel claims are evaluated under a two-part test formulated in *Strickland*, requiring a showing of both deficient performance and prejudice. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *Cannon v. State*, 252 S.W.3d 342, 349–50 (Tex. Crim. App. 2008). An attorney's performance is deficient when it falls "below an objective standard of reasonableness under prevailing professional norms and according to the necessity of the case." *Ex parte Moore*, 395 S.W.3d 152, 156–57 (Tex. Crim. App. 2013) (internal quotations omitted).

In evaluating trial counsel's performance, we must indulge a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance" and was motivated by sound trial strategy. *In re M.S.*, 115 S.W.3d 534, 549 (Tex. 2003). When the record is silent concerning the reasons for trial counsel's actions, we do not engage in speculation to find ineffective assistance of counsel. *Gamble v. State*, 916 S.W.2d 92, 93 (Tex. App.—Houston [1st Dist.] 1996, no pet.). Accordingly, ineffective assistance claims "must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness." *Mallett v. State*, 65 S.W.3d 59, 63 (Tex. Crim. App. 2001) (cleaned up). "Failure to satisfy either prong of the *Strickland* test is fatal." *Johnson v. State*, 432 S.W.3d 552, 555 (Tex. App—Texarkana 2014, pet. ref'd) (citing *Ex parte Martinez*, 195 S.W.3d 713, 730 n.14 (Tex. Crim. App. 2006)). "Thus, we need not examine both *Strickland* prongs if one cannot be met." *Id.*; *Strickland*, 466 U.S. at 697.

## C. Discussion

Here, Gutierrez did not file a motion for new trial. In the absence of a record of counsel's reasoning, we must generally presume that appellant's trial counsel had a plausible reason for his actions. *See Thompson v. State*, 9 S.W.3d 808, 814 (Tex. Crim. App. 1999). To find that Gutierrez's trial counsel was ineffective would thus call for speculation, which we will not do. *See Jackson v. State*, 877 S.W.2d 768, 771 (Tex. Crim. App. 1994); *Gamble*, 916 S.W.2d at 93. Nonetheless, Gutierrez argues that trial counsel failed to present mitigating evidence such as: (1) Gutierrez "had not actually hurt anyone" even though the experience was "frightening for the officer"; (2) Gutierrez was "apparently using drugs"; (3) Gutierrez was "prone" to indiscretions due to his youth; and (4) Gutierrez

11

had mental health problems. Lastly, Gutierrez states that trial counsel "did almost no investigation."

First, we note that trial counsel did request that the trial court place him on community supervision "[i]n light of his youth," and trial counsel did request that the trial court consider that "no one needed so much as a Band-aid." Furthermore, trial counsel requested a mental health evaluation, which was provided to the trial court in the presentence investigation report. As previously stated, the record is silent as to what investigative steps trial counsel took and what conclusions he may have drawn. *See Stokes v. State*, 298 S.W.3d 428, 432 (Tex. App.—Houston [14th Dist.] 2009, pet. ref'd) (providing that a claim for ineffective assistance based on trial counsel's failure to investigate generally fails absent a showing of what the investigation would have revealed that reasonably could have changed the result of the case); *Brown v. State*, 129 S.W.3d 762, 767 (Tex. App.—Houston [1st Dist.] 2004, no pet.) ("We will not assume that counsel did not investigate a defense when the record is merely silent as to the depth of counsel's investigation.").

Even assuming without deciding that trial counsel's performance was deficient during the punishment phase, Gutierrez does not prevail on his ineffective assistance claim because he has not shown he was prejudiced by trial counsel's deficient performance. An appellant is required to show that mitigating evidence was available before he can establish ineffective assistance based on a failure to present mitigating evidence. *See Bone v. State*, 77 S.W.3d 828, 834–35 (Tex. Crim. App. 2002). Gutierrez did not present any mitigating evidence because he raises his ineffective assistance claim

12

for the first time on direct appeal; thus, we are unable to determine whether the trial court would have imposed a less severe punishment had Gutierrez presented mitigating evidence. *See Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005) ("Direct appeal is usually an inadequate vehicle for raising such a claim because the record is generally undeveloped."). Nonetheless, the trial court sentenced Gutierrez well below the maximum sentence of ninety-nine years or life imprisonment. *See Lampkin v. State*, 470 S.W.3d 876, 919 (Tex. App.—Texarkana 2015, pet. ref'd) (noting factors considered in assessing prejudice at punishment phase include whether defendant received maximum sentence and any disparity "between the sentence imposed and the sentence(s) requested by the respective parties"). We conclude Gutierrez failed to demonstrate a reasonable probability that but for trial counsel's deficient performance, the trial court would have assessed his punishment differently. *See Strickland*, 466 U.S. at 669. We overrule his last issue.

## V. CONCLUSION

We affirm the judgment of the trial court.

JAIME TIJERINA
Justice

Do not publish.
TEX. R. APP. P. 47.2 (b).

Delivered and filed on the
20th day of July, 2023.

13