*238 OPINION OF THE COURT
Stein, J.
In this matter, we are asked to determine the appealability of two Supreme Court orders. The first order denied Facebook, Inc.’s motion to quash certain warrants, issued pursuant to the Federal Stored Communications Act, that sought the account information and communications of various Facebook subscribers in connection with a criminal investigation. The second order denied Facebook’s motion to compel disclosure of the affidavit supporting the warrant application.
This case undoubtedly implicates novel and important substantive issues regarding the constitutional rights of privacy and freedom from unreasonable search and seizure, and the parameters of a federal statute establishing methods by which the government may obtain certain types of information. Nevertheless, while it may be tempting for this Court to address those issues, we must — in this case as in every other case — first ascertain whether we possess the necessary jurisdiction to do so under our own constitution and statutes. This presents equally important issues regarding the separation of powers among our three branches of government. With these principles in mind, because the orders resolving Facebook’s motions relate to warrants issued in a criminal proceeding, and the Criminal Procedure Law does not authorize an appeal from either order, we are constrained by law to affirm the Appellate Division order dismissing Facebook’s appeals to that Court.
*239 L
In July 2013, Supreme Court issued 381 warrants directed at Facebook upon a warrant application by the New York County District Attorney’s Office that was supported by an investigator’s affidavit. The warrants, based upon a finding of probable cause, sought subscriber information and content from numerous user accounts in connection with a pending criminal investigation into allegations of widespread Social Security Disability fraud involving the crimes of larceny and filing a false instrument. The warrants directed Facebook “to retrieve, enter, examine, copy, analyze, and . . . search [each] TARGET FACEBOOK ACCOUNT for the . . . [specified] evidence and property, and ... to bring it before the [c]ourt without unnecessary delay.” The specified evidence included, among other things, each target account holder’s profile information, contact and financial account information, groups, photos and videos posted, historical login information, and “[a]ny public or private messages.” The warrants prohibited Facebook from notifying its subscribers or otherwise disclosing the existence or execution of the warrants, in order to prevent interference with the investigation.
Facebook moved to quash the warrants, arguing that they were constitutionally defective because they were overbroad and lacked particularity; Facebook also challenged the nondisclosure component of the warrants. Supreme Court denied the motion, holding that Facebook lacked standing to assert any expectation of privacy or Fourth Amendment challenge on behalf of the individual account holders and that, in any event, the warrants were supported by probable cause and were not unconstitutionally overbroad. Supreme Court also rejected Facebook’s challenge to the nondisclosure clauses of the warrants, concluding that disclosure of the warrants to the subscribers would risk jeopardizing the ongoing criminal investigation. The court directed Facebook to immediately comply with the warrants.
Facebook appealed Supreme Court’s order, and sought a stay thereof pending resolution of its appeal. After the Appellate Division denied Facebook’s application for a stay, Facebook complied with the warrants and furnished the requested digital data.
While Facebook’s appeal was still pending, some of the targeted Facebook users were indicted for crimes stemming *240 from the disability fraud investigation. The warrants and the investigator’s supporting affidavit were eventually unsealed by .orders of Supreme Court, and Facebook was then permitted to notify the targeted individuals of the existence of the warrants. Despite the unsealing orders, however, the District Attorney’s Office refused to disclose the supporting affidavit to Facebook or the general public. Facebook, therefore, moved for an order compelling disclosure of the affidavit. The District Attorney’s Office opposed the motion, arguing that the unsealing orders did not render the affidavit available to the public, and asserting that the affidavit had not yet been provided to the targeted individuals who were being criminally prosecuted. Supreme Court denied Facebook’s motion to compel disclosure of the affidavit, and Facebook appealed that order, as well.
In a single order, the Appellate Division dismissed both of Facebook’s appeals on the ground that they were taken from nonappealable orders (132 AD3d 11 [1st Dept 2015]). As relevant here, the Appellate Division explained that “[d]irect appellate review of interlocutory orders issued in a criminal proceeding is not available absent statutory authority” (id. at 18). Inasmuch as “neither CPL article 690[, governing warrants], nor CPL article 450, which sets forth when a criminal appeal can be taken, provides a mechanism for a motion to quash a search warrant, or for taking an appeal from a denial of such a motion,” the Appellate Division concluded that the orders denying Facebook’s motions were not appealable (id.). In so holding, the Appellate Division rejected Facebook’s request that the court treat the warrants as civil subpoenas for appealability purposes (see id. at 18-20).
This Court granted Facebook leave to appeal (26 NY3d 914 [2015]), and we now affirm.
II.
The warrants in question were issued, in accordance with the procedures of CPL article 690, pursuant to title II of the Electronic Communications Privacy Act of 1986, officially entitled the “Stored Wire and Electronic Communications and Transactional Records Access” and commonly referred to as the Stored Communications Act or the SCA (see Electronic Communications Privacy Act of 1986, Pub L 99-508, tit II, 100 US Stat 1860, codified as amended at 18 USC § 2701 et seq.). When enacting the SCA, Congress observed that the “law must advance with the technology to ensure the continued vitality of *241 the [F]ourth [A]mendment” (S Rep 99-541, 99th Cong, 2d Sess, reprinted in 1986 US Code Cong & Admin News at 3555, 3559). The SCA was, therefore, meant “to protect privacy interests in personal and proprietary information” transmitted through then-emerging computer-based forms of communication, but it was also enacted to strike a “balance” between privacy expectations and protecting “the Government’s legitimate law enforcement needs” {id. at 3557, 3559).
To that end, the SCA prohibits the providers of electronic communication and remote computing services[1] from disclosing information regarding subscriber accounts, or the contents of subscriber communications, with certain exceptions provided elsewhere in the statute (see 18 USC § 2702 [a]). Section 2703 sets forth exceptions to the prohibition on disclosure with respect to the obligation of providers to release information to governmental authorities. Specifically, section 2703 sets forth three primary methods by which a governmental entity may obtain disclosure: (1) a “warrant” issued in accordance with state or federal criminal procedure by a court of competent jurisdiction {id. § 2703 [a], [b] [1] [A]; [c] [1] [A]); (2) an “administrative subpoena authorized by a Federal or State statute or a Federal or State grand jury or trial subpoena” {id. § 2703 [b] [1] [B] [i]; [c] [2]); or (3) a court order granted under section 2703 (d) upon a showing of “specific and articulable facts” demonstrating “reasonable grounds” to believe that the information sought is “relevant and material to an ongoing criminal investigation” {id. § 2703 [d]; see id. § 2703 [b] [1] [B] [ii]; M [1] [B]).
The appropriate method to be used depends on the type of provider, the age of the communication sought, and whether the government seeks disclosure of content-based information {see id. § 2703 [a]-[d]). For example, a governmental entity may obtain disclosure from an electronic communication service of the content of a communication stored for 180 days or less only with a warrant issued by a magistrate upon probable cause and in accordance with the applicable federal or state warrant procedures {see id. § 2703 [a]). Older communications held by an electronic communication service, or communications held *242 for storage by a remote computing service, may be obtained either without notice to the subscriber pursuant to a warrant or with prior notice to the subscriber[2] if the government uses a subpoena or obtains a court order for disclosure under subsection (d) (see id. § 2703 [b]). A warrant, subpoena, or court order may be used to obtain certain non-content-based information, such as a subscriber’s name, address, length of service, telephone records, or means of payment (see id. § 2703 [c]).
The SCA provides that no cause of action will lie against a provider that discloses information “in accordance with the terms of a court order, warrant, [or] subpoena” issued under the statute {id. § 2703 [e]; see id. § 2707 [e] [1]). Nevertheless, subsection (d) of section 2703 allows “[a] court issuing an order pursuant to this section, on a motion made promptly by the service provider, [to] quash or modify such order, if the information or records requested are unusually voluminous in nature or compliance with such order otherwise would cause an undue burden on such provider.” The primary question before us in this appeal is whether — assuming, without deciding, the propriety of a motion to quash an SCA warrant (as opposed to a subsection [d] court order) in the first instance — an order resolving a motion to quash SCA warrants is appealable.
III.
That the SCA draws a distinction between warrants and subpoenas, and the content that may be obtained therewith, is of critical significance with respect to a determination of appellate jurisdiction over the appeal from the denial of Facebook’s motion to quash. It is a fundamental precept of the jurisdiction of our appellate courts that “ finjo appeal lies from a determination made in a criminal proceeding unless specifically provided for by statute’ ” (People v Lovett, 25 NY3d 1088, 1090 [2015], quoting People v Pagan, 19 NY3d 368, 370 [2012]; see NY Const. art VI, § 3 [b]; People v Bautista, 7 NY3d 838, 838-839 [2006]; People v Hernandez, 98 NY2d 8, 10 [2002]; People v De Jesus, 54 NY2d 447, 449 [1981]; People v Zerillo, 200 NY 443, 446 [1911]). No provision of the Criminal Procedure Law articles that govern appeals — which are among “ ‘the most highly structured and highly particularized articles of procedure’ ” (Hernandez, 98 NY2d at 10, quoting People v Laing, 79 *243 NY2d 166, 171 [1992]) — authorizes an appeal to either an intermediate appellate court or to this Court from an order denying a motion to quash or vacate a search warrant (see CPL art 450; CPL 470.60). Moreover, no civil appeal may be brought from an order entered in a criminal action or proceeding (see NY Const, art VI, § 3 [b]; CPLR 5601; CPL 450.90).
Consequently, we have held for decades that “no appeal lies from [an] order denying . . . [an] application to vacate a search warrant ... as this is an order in a criminal [case], [and] an appeal from [such an order] is not provided for” by statute (Matter of Police Benevolent Assn. of N.Y. State Police v Gagliardi, 9 NY2d 803, 803-804 [1961] [emphasis added]; see also Matter of Abe A., 56 NY2d 288, 293 [1982]). By contrast, a motion to quash a subpoena issued prior to the commencement of a criminal action, even if related to a criminal investigation, “is civil by nature” (Matter of Abrams [John Anonymous], 62 NY2d 183, 192 [1984]; see Matter of Newsday, Inc., 3 NY3d 651, 652 [2004]; People v Santos, 64 NY2d 702, 704 [1984]).[3] Thus, an order resolving a motion to quash such a subpoena is a final and appealable order in a special proceeding that is “not subject to the rule restricting direct appellate review of orders in criminal proceedings” (Matter of Abrams, 62 NY2d at 192; see Matter of Newsday, 3 NY3d at 652 n).
In the instant matter, Facebook concedes that an order addressing a motion to quash a warrant is not appealable, but Facebook contends — and the dissent agrees — that, despite being denominated as “warrants,” SCA warrants are more analogous to subpoenas than to traditional search warrants involving tangible property because they compel third parties to disclose digital data. Thus, Facebook and the dissent urge us to treat Supreme Court’s first order denying its motion to quash the warrants as an appealable order denying a motion to quash subpoenas. This argument is unpersuasive.
It is true that the method of compliance with an SCA warrant has some characteristics that resemble a response to a subpoena. Most prominently, an SCA warrant compels a third party — here, Facebook — to compile and turn over digital data *244 under its control, and the presence of a law enforcement officer is not required for service or execution of the warrant (see 18 USC § 2703 [g]). A traditional search warrant, by comparison, authorizes law enforcement to enter, search, and seize property (see CPL 690.05 [2]). These differences in execution, however, can be easily explained by the nature of the material sought. The service provider is more likely to be better equipped to access and conduct a search of its own digital information than law enforcement personnel (see generally United States v Bach, 310 F3d 1063, 1067 [8th Cir 2002]), and the data may be stored in different locations. Thus, the framework of execution for SCA warrants ensures efficiency and minimizes intrusion into the provider’s business while promoting and protecting legitimate law enforcement interests in criminal investigation. Despite the minor similarities between SCA warrants and subpoenas, in this post-digital world, we are not convinced that SCA warrants — which are required under the statute to obtain certain content-based information that cannot be obtained with a subpoena due to heightened privacy interests in electronic communications (see 18 USC § 2703 [a], [b] [1] [A]; S Rep 99-541, 99th Cong, 2d Sess, reprinted in 1986 US Code Cong & Admin News at 3555, 3559) — should nevertheless be treated as subpoenas.
Initially, the SCA plainly distinguishes between subpoenas and warrants, and there is no indication that Congress intended for SCA warrants to be treated as subpoenas. Indeed, to so hold would be to ignore the plain language of the SCA in contravention of the rules of statutory interpretation (see People v Jones, 26 NY3d 730, 733 [2016]; Matter of DaimlerChrysler Corp. v Spitzer, 7 NY3d 653, 660 [2006]). As the Second Circuit recently explained,
“[w]arrants and subpoenas are, and have long been, distinct legal instruments. Section 2703 of the SCA recognizes this distinction and, unsurprisingly, uses the ‘warrant’ requirement to signal (and to provide) a greater level of protection to priority stored communications, and ‘subpoenas’ to signal (and provide) a lesser level. Section 2703 does not use the terms interchangeably. Nor does it use the word ‘hybrid’ to describe an SCA warrant. . . . We see no reasonable basis in the statute from which to infer that Congress used ‘warrant’ to mean ‘subpoena’ ” (Matter of Warrant to Search a Certain E-Mail Account *245 Controlled & Maintained by Microsoft Corp., 829 F3d 197, 214 [2d Cir 2016] [citations omitted], reh denied 855 F3d 53 [2d Cir, Jan. 24, 2017]).
Notably, the Second Circuit is not alone in refusing to equate SCA warrants with subpoenas. The Eighth Circuit has also observed that, “[w]hile warrants for electronic data are often served like subpoenas (via fax), Congress called them warrants and . . . Congress intended them to be treated as warrants” CBach, 310 F3d at 1066 n 1).
Significantly, under our own jurisprudence, we must “look[ ] to the true nature of [a] proceeding and to the relief sought in order” to determine whether the proceeding is a special civil proceeding giving rise to an appealable order or, instead, a criminal proceeding for which an appeal must be statutorily authorized (Matter of Abrams, 62 NY2d at 191). Conducting that analysis here, we conclude that an SCA warrant — and the relief sought in a challenge to such a warrant — arises in a criminal, not a civil, proceeding.
Unlike a subpoena, which finds broad use in civil matters, an SCA warrant is not “civil by nature” (id. at 192). As with a traditional search warrant, an SCA warrant may be issued only to a governmental entity, upon a showing of probable cause, and pursuant to statutory warrant procedures (see 18 USC § 2703 [a], [b] [1] [A]; [c] [1] [A]). In addition, while a subpoena does not commence a criminal proceeding because it is not issued by a court, the issuance of a warrant by the court does just that (see CPL 1.20 [18]; Cayuga Indian Nation of N.Y. v Gould, 14 NY3d 614, 634 [2010]; Matter of B. T. Prods. v Barr, 54 AD2d 315, 319 [4th Dept 1976], affd 44 NY2d 226 [1978]).[4] While the dissent claims that this “misses the point,” it is, in fact, the crux of the matter. A motion to quash a *246 subpoena that was not issued by the court may commence a separate civil proceeding; there is no authority or, indeed, logic, upon which we may conclude that a motion to quash a warrant that actually commenced a criminal proceeding gives rise to yet another proceeding — this time civil in nature — that can somehow be separated from the warrant itself. Additionally, because SCA warrants are governed by the same substantive and procedural laws as traditional search warrants (see generally CPL arts 690, 700; People v Tambe, 71 NY2d 492, 500 [1988]), there is simply no basis in law for distinguishing such warrants from their traditional counterparts for jurisdictional purposes.
Moreover, a challenge to a subpoena, even where related to a criminal investigation, is “limited in scope, challenging only the validity of the subpoena or the jurisdiction of the issuing authority,” and “substantial delay in the proceedings is unlikely” to result from permitting appeals from orders deciding such motions (Matter of Santangello v People, 38 NY2d 536, 539 [1976]). By contrast, the issuance of a warrant potentially has significant Fourth Amendment implications. A challenge to criminal warrants, such as the one Facebook raised here,[5] will often seek review of a neutral magistrate’s original determination of probable cause upon a sworn affidavit and compliance with the strictures of the Fourth Amendment. It can hardly be disputed that such relief is, quintes *247 sentially, of a criminal nature.[6] Accordingly, based on a review of the nature of the proceeding and the relief sought — not merely on strict adherence to the term “warrant,” as the dissent claims — we conclude that the orders below related to criminal search warrants issued in connection with a criminal investigation and, therefore, the order denying Facebook’s motion to quash is one made in a criminal proceeding (see Matter of Abrams, 62 NY2d at 191). Thus, the order is not appealable (see Matter of Police Benevolent Assn. of N.Y. State Police, 9 NY2d at 803-804; see also Matter of Alphonso C., 38 NY2d 923, 924-925 [1976]). Indeed, to hold otherwise would be to impermissibly and judicially create a right to appeal in a criminal matter that has not been authorized by our legislature (see NY Const, art VI, § 3 [b]; Hernandez, 98 NY2d at 10).
IV.
The dissent posits that Facebook must have a right to appeal in state courts, despite the absence of any statutory predicate under state law, on the ground that the SCA provides Facebook with a right to bring a motion to quash in the first instance and, thus, “normal federal rights of appeal apply” (dissenting op at 260). While we decline to opine on the propriety of a motion to quash a warrant under 18 USC § 2703 (d), suffice it to say that the dissent’s argument, which is essentially a preemption argument,[7] relies on two flawed premises. First, the dissent inaccurately characterizes the SCA as authorizing a “freestanding cause of action” for providers to move to quash SCA warrants (dissenting op at 260). Second, the dissent *248 concludes that an SCA “warrant” is equivalent to an “administrative subpoena,” despite the clear and unmistakable distinction between the two intended by Congress, as reflected in the statutory language of the SCA.
The SCA — which recognizes a variety of causes of action in connection with the release of electronic data that do not apply here (see 18 USC § 2707) — does not provide a third party with an independent cause of action under section 2703 (d) to challenge the issuance of either a warrant, subpoena, or court order. Rather, that section merely authorizes the provider to make a “motion” to a court that has already issued an “order” (id. § 2703 [d]); in other words, section 2703 (d) provides for a motion in an already-existing proceeding, not the commencement of a new and separate proceeding.
Nor does the SCA provide a third party who makes a motion to quash with an express right to appeal the determination of such a motion. The federal courts of appeals have jurisdiction over “final decisions” of the federal district courts (28 USC § 1291). A final decision is one that, unlike the orders at issue here, “ ‘ends the litigation on the merits and leaves nothing for the court to do but execute the judgment’ ” (Coopers & Lybrand v Livesay, 437 US 463, 467 [1978], quoting Catlin v United States, 324 US 229, 233 [1945]). Generally, due to this limitation on federal appellate jurisdiction, “one to whom a subpoena is directed may not appeal the denial of a motion to quash that subpoena but must either obey its commands or refuse to do so and contest the validity of the subpoena if he is subsequently cited for contempt on account of his failure to obey” (United States v Ryan, 402 US 530, 532 [1971]; see Cobbledick v United States, 309 US 323, 330 [1940]). As the dissent notes, federal courts have held that “[a] district court order enforcing a subpoena issued by a government agency in connection with an administrative investigation may be appealed immediately without first performing the ritual of obtaining a contempt order” (United States v Construction Prods. Research, Inc., 73 F3d 464, 469 [2d Cir 1996] [emphases added]). However, this is a narrow exception to the general rule barring appeals from motions to quash due to a lack of finality, which rule “applies whether the subpoena is issued in connection with civil and criminal actions, or grand jury proceedings, and whether the person (or entity) seeking to prevent enforcement of the subpoena is a party to the litigation or a non-party witness” (In re Air Crash at Belle Harbor, N.Y. on Nov. 12, 2001, 490 F3d 99, 104 [2d Cir 2007] [citation omitted]; Construction Prods. *249 Research, Inc., 73 F3d at 469; see 28 USC § 1291; Ryan, 402 US at 532-533).
Notably, the exception permitting appeals of administrative subpoenas has not been extended to warrants, as “[a]n order denying the suppression of evidence or denying a motion to quash a warrant in a criminal trial is interlocutory and generally not appealable by a private party until a final judgment in the case has been rendered” (Matter of 949 Erie St., Racine, Wisconsin, 824 F2d 538, 540 [7th Cir 1987]; see Matter of Consolidated Rail Corp., 631 F2d 1122, 1125 [3d Cir 1980]; see also DiBella v United States, 369 US 121, 129 [1962] [“An order granting or denying a pre-indictment motion to suppress does not fall within any class of independent proceedings otherwise recognized by this Court, and there is every practical reason for denying it such recognition. To regard such a disjointed ruling ... as the termination of an independent proceeding, with full panoply of appeal and attendant stay, entails serious disruption to the conduct of a criminal trial”]; In re Search of Elec. Communications in the Account of chakafatta@gmail.com at Internet Serv. Provider Google, Inc., 802 F3d 516, 525 [3d Cir 2015]). This makes sense because the rationale behind the exception allowing appeals of administrative subpoenas is that an “administrative proceeding is self-contained and, unlike in the case of a grand jury or trial, there is no 'further judicial inquiry which would be halted were the offending [subpoenaed party] permitted to appeal’ ” (In re Air Crash at Belle Harbor, 490 F3d at 105 [emphasis added], quoting Construction Prods. Research, Inc., 73 F3d at 469). This exception is facially inapplicable to warrants issued in criminal proceedings.[8]
Contrary to the dissent’s assertion, neither the Second Circuit (nor any other court directly addressing appeal- *250 ability) has determined, or even suggested, that an order denying a motion to quash an SCA warrant would be treated as a final order in an independent proceeding or as an order resolving a motion to quash an administrative subpoena for finality and appealability purposes. Indeed, recognizing the finality limitation on the appellate jurisdiction of federal courts, the parties in Matter of Warrant to Search a Certain E-Mail Account Controlled & Maintained by Microsoft Corp. (829 F3d at 205) stipulated to a contempt finding so as to secure appellate jurisdiction (see generally Ryan, 402 US at 532-533). Furthermore, the Second Circuit’s conclusion that the plain language of the SCA evidences Congress’s intent to recognize the legal distinction between warrants and subpoenas profoundly undermines the dissent’s prediction that orders pertaining to such warrants would, for appealability purposes, be treated as orders relating to subpoenas (see Matter of Warrant to Search a Certain E-Mail Account Controlled & Maintained by Microsoft Corp., 829 F3d at 205).
Nor are we persuaded that federal law would otherwise preempt our dismissal of these appeals, which rests “squarely on . . . neutral state [r]ule[s] . . . [for] administ[ering] . . . state court[ ]” jurisdiction (Johnson v Fankell, 520 US 911, 918 [1997]). “The general rule, ‘bottomed deeply in belief in the importance of state control of state judicial procedure, is that federal law takes the state courts as it finds them,’ ” and “[s]tates thus have great latitude to establish the structure and jurisdiction of their own courts” (Johnson, 520 US at 919, quoting Hart, The Relations Between State and Federal Law, 54 Colum L Rev 489, 508 [1954]). Our jurisdictional limitations do not discriminate against third-party provider claims under the SCA but, rather, “reflect the concerns of power over the person and competence over the subject matter that jurisdictional rules are designed to protect” (Haywood v Drown, 556 US 729, 739 [2009]). Moreover, our holding does not impose any burden on any right the SCA may provide to Facebook to move to quash the warrants at issue here. The SCA provides no express right to appeal, and the United States Supreme Court “has never held that the States are required to establish avenues of appellate review” (M. L. B. v S. L. J., 519 US 102, 111 [1996], quoting Rinaldi v Yeager, 384 US 305, 310 [1966]; see Johnson, 520 *251 US at 919; Kohl v Lehlback, 160 US 293, 299 [1895] [“the right of review in an appellate court is purely a matter of state concern”]).
V.
To the extent Facebook and the dissent argue that SCA warrants will escape judicial review if orders relating to motions to quash such warrants are deemed not appealable, that argument is also flawed. By its very nature, a warrant is subject to judicial review because it cannot be issued unless a neutral magistrate makes a finding of probable cause and particularity (see US Const 4th Amend; NY Const, art I, § 12). In addition, there are avenues of relief available to those subjects of SCA warrants who are ultimately prosecuted and who may, therefore, challenge the validity of the warrant on statutory or constitutional grounds, as well as potential civil remedies for those who are not formally accused (see generally 18 USC § 2707; 42 USC § 1983; Bivens v Six Unknown Named Agents of Fed. Bur. of Narcotics, 456 F2d 1339, 1347 [2d Cir 1972]).
While Facebook’s concerns, as a third party, about overbroad SCA warrants may not be baseless, we are mindful that there are counterbalancing concerns that militate against authorizing appellate review of warrants issued in connection with criminal prosecutions outside of the review that may be sought by a criminal defendant following conviction. For example, we have cautioned that we must abide by the statutory authorizations for appeals in criminal cases in order to “limit appellate proliferation in criminal matters, . . . [because] [l]itigation may be compounded unduly by protracted and multifarious appeals and collateral proceedings frustrating the speedy determination of disputes” (Matter of State of New York v King, 36 NY2d 59, 63 [1975]). Indeed, the United States Supreme Court has recognized this very same concern for limiting appeals in criminal actions in the interest of expedient justice (see Ryan, 402 US at 532-533). Any debates about the balancing of such concerns is beside the point, because the weighing of these policy considerations is not ultimately within our province.
“That the Legislature has not authorized an appeal from an order in a criminal proceeding is conclusive; and ‘any arguments for a change in the practice, however persuasive, must be addressed to the legislature’ ” (Matter of Santangello, 38 NY2d at 539-540, quoting Cohen & Karger, Powers of the New York Court of Appeals § 188 at 707 [rev ed 1952]). We “may *252 ‘not resort to interpretative contrivances to broaden the scope and application’ of unambiguous statutes to ‘create a right to appeal out of thin air’ in order to ‘fill the . . . void, without trespassing on the Legislature’s domain and undermining the structure of article 450 of the CPL’ ” (People v Stevens, 91 NY2d 270, 279 [1998], quoting Laing, 79 NY2d at 170-171, 172; see Hernandez, 98 NY2d at 10). Until such time as the legislature may deem it appropriate to provide statutory authorization for appellate review, we have every faith in the competence and efficacy of our trial courts to resolve any motions properly brought by providers under the SCA in state courts.
Inasmuch as there is no statutory predicate for Facebook’s appeal from the order denying its motion to quash the SCA warrants that were issued in a criminal proceeding (see CPL art 450; CPL 470.60), nor any other legal basis for such appeal, we must affirm the Appellate Division’s dismissal of Facebook’s appeal insofar as taken from that order. Supreme Court’s order denying Facebook’s motion to compel disclosure of the affidavit is, likewise, not appealable, although Facebook may explore other procedural avenues to raise its claim (see Matter of Newsday, 3 NY3d at 652).
In light of our holding, we have no occasion to consider, and therefore do not pass on, the merits of the parties’ arguments regarding Facebook’s standing to assert Fourth Amendment claims on behalf of its users, whether an individual has a reasonable expectation of privacy in his or her electronic communications, the constitutionality of the warrants at issue, or the propriety of the District Attorney’s refusal to release the supporting affidavit. Nor do we pass on the question of whether 18 USC § 2703 (d) authorizes a motion to quash an SCA warrant in the first instance. Due to the absence of jurisdiction for Facebook’s appeal to either this Court or the Appellate Division, these issues remain open.
Accordingly, the order of the Appellate Division should be affirmed, without costs.

. An “electronic communication service” is “any service which provides to users thereof the ability to send or receive wire or electronic communications” (18 USC § 2510 [15]; see 18 USC § 2711 [1]), whereas a “remote computing service” provides “to the public . . . computer storage or processing services by means of an electronic communications system” (id. § 2711 [2]).

. Notice to the subscriber may be delayed in accordance with 18 USC § 2705.

. The appealability of an order resolving a nonparty’s motion to quash a subpoena issued after the commencement of a criminal action and the propriety of the Appellate Division cases relied on by the dissent (see e.g. People v Marin, 86 AD2d 40, 42 [2d Dept 1982]), of which we have never approved (see People v Santos, 64 NY2d 702, 704 [1984]), are not before us on this appeal.

. The dissent incorrectly asserts that our holdings in these cases undermine our reasoning in the instant matter. In Cayuga Indian Nation of N.Y.v Gould, we held that a declaratory judgment action may be entertained, in the court’s discretion and prior to the commencement of a criminal action, where the constitutionality or legality of a statute or regulation is in question and no questions of fact are involved (14 NY3d 614, 634 [2010]). Notably, however, we did not review that part of the order below dismissing the declaratory judgment action insofar as it challenged a search warrant (see id. at 632 n 7), and Facebook’s challenge to the search warrants here would not fall within the rule articulated in that case allowing for a declaratory judgment. Moreover, while the dissent quotes at length from a passage in Cayuga that the dissent claims directly contradicts our holding, our discussion of Kelly’s Rental v City of New York (44 NY2d 700 [1978]) in Cayuga merely clarified that the issuance of a search warrant does not commence a criminal *246 action or prosecution (which is commenced by the filing of an accusatory instrument), but it does commence a criminal proceeding; this principle is entirely consistent with our holding herein (see Cayuga, 14 NY3d at 634-635). Likewise, our ultimate holding in Matter of B. T. Prods. v Barr (44 NY2d 226 [1978]) does nothing to undermine our current assertion that a search warrant commences a criminal proceeding. There, the Court held that, although “[i]n most cases, prohibition will not be available to challenge the validity of a search warrant,” such remedy may be available where the challenge “goes to jurisdiction rather than simply to the existence of probable cause in a particular situation” (id. at 233). The arguments raised by Face-book do not implicate the extraordinary and limited remedy of prohibition, as there is no question that Supreme Court had jurisdiction to issue the search warrants at issue here.

. While Facebook may have alleged that the materials sought by the warrants were unusually voluminous, Facebook made no argument below that the warrants imposed any type of administrative burden on it with respect to compliance. At the trial level, Facebook sought only to challenge the warrant on constitutional grounds and alleged voluminosity only in the context of its overbreadth argument.

. The dissent’s point that a motion to quash an SCA warrant may not always seek to raise an argument attacking the warrant on constitutional grounds is of no moment. That such relief may be sought is sufficient to aid us in determining that the matter at hand is a criminal one. Furthermore, the dissent’s assertion that Facebook’s standing to raise Fourth Amendment claims “has nothing to do with the criminal law” ignores that other courts have found the issue of third-party standing in the Fourth Amendment context more complex (see e.g. Microsoft Corp. v United States Dept. of Justice, 2017 WL 530353, *15, 2017 US Dist LEXIS 18691, *45-46 [WD Wash, Feb. 8, 2017, No. C16-0538JLR]; see also Alderman v United States, 394 US 165 [1969]; Rakas v Illinois, 439 US 128 [1978]). Nevertheless, we take no position on the merits of that issue, as it is not properly before us.

. Notably, the parties to the appeal before us do not raise a preemption argument. This Court generally refrains from addressing issues not argued by the parties, as we have recognized that, to do otherwise, would be unfair to the litigants, “who expect us to decide their appeals on rationales advanced by the parties, not arguments their adversaries never made” (Misicki v Caradonna, 12 NY3d 511, 519 [2009]).

. To be sure, federal courts have also recognized an exception to the principle requiring that a party be found in contempt to obtain a final judgment “in the limited class of cases where denial of immediate review would render impossible any review whatsoever of an individual’s claims” (United States v Ryan, 402 US 530, 533 [1971]). However, this narrow exception applies where the party against whom disclosure is sought has an insufficient stake in the matter to risk a finding of contempt (see United States v Beltramea, 831 F3d 1022, 1024 [8th Cir 2016]; In re Air Crash at Belle Harbor, N.Y. on Nov. 12, 2001, 490 F3d 99, 107 [2d Cir 2007]; In re Grand Jury Proceeding, 528 F2d 983, 984 [5th Cir 1976]; see generally Perlman v United States, 247 US 7, 13 [1918]). Here, Facebook asserts an independent business and financial interest in ensuring that its users’ privacy rights are respected. Thus, it follows that denial of review of the order denying its mo- *250 tion to quash the SCA warrants does not effectively render review impossible (see generally Firestone Tire & Rubber Co. v Risjord, 449 US 368, 376 [1981]).