

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

No. 06-16-00150-CR

NATHANIEL NORRIS, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 76th District Court
Morris County, Texas
Trial Court No. 11,421CR

Before Morriss, C.J., Moseley and Burgess, JJ.
Memorandum Opinion by Justice Moseley

MEMORANDUM OPINION

Nathaniel Norris was convicted by a jury of indecency with a child. Based on the jury's recommendation at punishment, the trial court sentenced Norris to five years' imprisonment, but suspended the imposition of the sentence in favor of placing Norris on community supervision for a period of five years.[1] On appeal, Norris argues that the trial court erred (1) in admitting allegedly unauthenticated Facebook Messenger texts[2] sent by cell phone and (2) in assessing court costs in this case, and all companion cases, even though they were consolidated for trial.[3]

We overrule Norris' first point of error because we find that the trial court did not abuse its discretion in overruling Norris' objection of improper authentication. We further find that Norris' second issue is moot, since the trial court entered a judgment nunc pro tunc removing the assessment of court costs. Accordingly, we affirm the trial court's judgment.

I.      **Trial Court Did Not Abuse Its Discretion in Admitting Facebook Messenger Texts**

Norris objected to the introduction of Facebook Messenger texts which the victim had received on her cell phone on the ground that they were not properly authenticated. The messages contained the following discussion between the victim and a person alleged to be Norris:

---

[1]*See* TEX. CODE CRIM. PROC. ANN. art. 42.12, § 4(a), (d)(5) (West Supp. 2016) (allowing jury to recommend community supervision for indecency with a child if the victim of the offense was not younger than fourteen years old).

[2]"Facebook . . . has a private messaging service that works much like an email account, or text function on a smart phone." *In re Colby II*, 145 A.D.3d 1271, 1272 n.1 (N.Y. App. Div. 2016) (omission in original) (quoting *In re 381 Search Warrants Directed to Facebook, Inc.*, 132 A.D.3d 11, 13 (N.Y. App. Div. 2015), *lv granted*, 26 N.Y.3d 914 (N.Y. 2015)).

[3]Norris also appeals three convictions of sexual assault of a child entered in companion cause numbers 06-16-00151-CR, 06-16-00152-CR, and 06-16-00153-CR, and one conviction for aggravated sexual assault of a child entered in companion cause number 06-16-00154-CR.

Person:          Promise me ur not saying anything to anybody

Victim:          Kristi is the only person i told.  I had to.

Person:          Plz keep this between us plz

Victim:          I am.  I still haven't started though.  Is it possible the test couldve been wrong.?

Person:          Me and Kristi think its all the stress ur under just relax and plz dnt tell anyone out this

Victim:          Okayy.  I wont

Person:          Promise

Person:          Plz dnt tell mike

Victim:          Okayy

Although each message from the person alleged to be Norris contained Norris' profile picture from his Facebook page, Norris argued that the Facebook Messenger texts could have come from anyone, were not dated, and were thus not properly authenticated.

"The requirement of authentication or identification is a condition precedent to admissibility . . . ." *Butler v. State*, 459 S.W.3d 595, 600 (Tex. Crim. App. 2015) (quoting TEX. R. EVID. 901(a)).  "[T]ext messages may be authenticated by 'evidence sufficient to support a finding that the matter in question is what its proponent claims.'" *Id.* at 600–01 (Tex. Crim. App. 2015) (quoting TEX. R. EVID. 901(a)).  "In a jury trial, it is the jury's role ultimately to determine whether an item of evidence is indeed what its proponent claims." *Id.* at 600.  Thus, "the trial court need only make the preliminary determination that the proponent of the item has supplied facts sufficient to support a reasonable jury determination that the proffered evidence is authentic." *Id.*

"In performing its Rule 104 gate-keeping function, the trial court itself need not be persuaded that the proffered evidence is authentic." *Tienda v. State*, 358 S.W.3d 633, 638 (Tex. Crim. App. 2012) (referencing TEX. R. EVID. 104). "The preliminary question for the trial court to decide is simply whether the proponent of the evidence has supplied facts that are sufficient to support a reasonable jury determination that the evidence he has proffered is authentic." *Id.* "This has been aptly described as a 'liberal standard of admissibility.'" *Butler*, 459 S.W.3d at 600 (quoting Cathy Cochran, *Texas Rules of Evidence Handbook* 922 (7th ed. 2007–08)). "The trial court's determination of whether the proponent has met this threshold requirement is subject to appellate review for an abuse of discretion and should not be countermanded so long as it is within the zone of reasonable disagreement." *Id.*; *Tienda*, 358 S.W.3d at 638.

Authentication of a text message "can be accomplished in myriad ways, depending upon the unique facts and circumstances of each case, including through the testimony of a witness with knowledge[,] . . . through evidence showing distinctive characteristics," or "by comparison with other authenticated evidence." *Butler*, 459 S.W.3d at 601; *Tienda*, 358 S.W.3d at 638. A witness might have knowledge of the authorship of a text message if the witness was "the actual author of the text message." *Butler*, 459 S.W.3d at 601. While an association of a cell-phone number or a Facebook account with a particular individual alone "might be too tenuous," other evidence, such as the text "message's 'appearance, contents, substance, internal patterns, or other distinctive characteristics'" can support a conclusion that the message was sent from a particular author. *Id.* at 601, 602 (quoting TEX. R. EVID. 901(b)(1)).

Prior to their admission, the victim testified that she lived with her grandfather, Mike, when she met Norris. According to the victim, Mike and Norris knew each other because they had once worked together as firefighters and trusted each other. The victim testified that Norris forced her to have sex with him, and she described the events to the jury in detail. Initially, she did not tell anyone about the incident. However, after she missed her menstrual cycle, the victim became scared that she might be pregnant and made an outcry to her friend's mother, Kristi, who was also Norris' neighbor.

A few days later, the victim purchased a pregnancy test, which returned a negative result. According to the victim, she told Norris that she had not yet menstruated when she saw Norris in his yard, and Norris replied that her missed menstural cycle was likely the result of stress. While speaking with her in person, Norris also asked the victim to keep the incident a secret.

The State then attempted to introduce the Facebook Messenger texts, which prompted a hearing outside of the jury's presence. During the hearing, the victim testified that she and Norris had previously communicated about other matters on Facebook Messenger and that she engaged in the exchange of messages referenced above on her cell phone with Norris on October 19, 2015. The victim (who authored the messages attributed to her as set forth above) testified she was "[p]ositive" that Norris was replying to those messages, which were later given to the police. She pointed out that the messages were from Norris' Facebook account and that each message contained his profile picture. She also testified that the substance of the Facebook Messenger texts was similar to the discussion she had previously had with Norris in his yard.

5

"Conversations and events that precede or follow the communications at issue, when identified or referred to within the written communication, can provide contextual evidence demonstrating the authenticity of such communications." *Butler*, 459 S.W.3d at 604. Here, the victim's testimony and the messages themselves, revealing information only known to Norris and Kristi at the time, constituted circumstantial evidence of the authenticity of the Facebook Messenger texts. *See id.* at 603. Accordingly, we conclude that there was a sufficient showing to allow the trial court to make the preliminary determination that the State had supplied facts supporting a reasonable jury determination that the Facebook Messenger texts were authentic messages from Norris. Finding no abuse of discretion, we overrule Norris' first point of error.

## II.     Court Costs Issue is Moot

In his second point of error, Norris argues that the trial court erred in assessing court costs in this case. In total, Norris has appealed from five separate convictions arising from five indictments which were consolidated for trial. Initially, the trial court's judgment assessed $599.00 in court costs in each case. However, the trial court later entered judgments nunc pro tunc eliminating the assessment of court costs in all but one case. Accordingly, Norris' second point of error is now moot and is overruled as such. *See Johnson v. State*, 432 S.W.3d 552, 554 n.2 (Tex. App.—Texarkana 2014, pet. ref'd).

### III.    Conclusion

We affirm the trial court's judgment.

Bailey C. Moseley
Justice

Date Submitted:     April 21, 2017
Date Decided:       April 27, 2017

Do Not Publish

7