People v Riche (2024 NY Slip Op 00785)

People v Riche

2024 NY Slip Op 00785

Decided on February 14, 2024

Appellate Division, Second Department

LaSalle, P.J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided on February 14, 2024
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

HECTOR D. LASALLE, P.J.
JOSEPH J. MALTESE
HELEN VOUTSINAS
LAURENCE L. LOVE, JJ.

2019-09489
 (Ind. No. 10163/16)

[*1]The People of the State of New York, respondent,
v
Fabrice Riche, appellant.

APPEAL by the defendant from a judgment of the Supreme Court (William M. Harrington, J.), rendered July 12, 2019, and entered in Kings County, convicting him of assault in the first degree, upon a jury verdict, and imposing sentence. The appeal brings up for review the denial, without a hearing (Joanne D. Quiñones, J.), of the defendant's motion to controvert a search warrant and to suppress evidence seized in the execution thereof.

Twyla Carter, New York, NY (Justine Luongo and Paul Wiener of counsel), for appellant.
Eric Gonzalez, District Attorney, Brooklyn, NY (Leonard Joblove, Gamaliel Marrero, and Sawyer White of counsel), for respondent.

LASALLE, P.J.

OPINION & ORDER
Almost all Americans 13 years of age and older (97%) own a cellular telephone [FN1]. Amidst this proliferation of cellular phones, it is of little surprise that issues relating to historical cell site location information (hereinafter CSLI) and call detail information continue to surface in criminal cases, such as the instant matter. Among other contentions, the defendant, who was convicted of assault in the first degree in connection with the repeated stabbing of his estranged wife's boyfriend (hereinafter the victim) on November 9, 2016, challenges the denial of that branch of his motion which was to controvert a search warrant obtained by the Kings County District Attorney's Office (hereinafter the People) to search certain historical CSLI records relating to his cellular phone as well as call detail information stored by wireless carrier T-Mobile for both his cellular phone number and his wife's cellular phone number. The defendant asserts, inter alia, that the search warrant was not properly executed "in the state," as required by CPL 690.20(1) and article VI, § 1(c) of the New York Constitution, because it was faxed to T-Mobile at a location in New Jersey. We hold that the warrant compelling T-Mobile to disclose the subject historical CSLI and call detail information was executed in Kings County, New York, where the search warrant was faxed by the People to T-Mobile, and thus, a Justice of the Supreme Court, Kings County, had jurisdiction to issue the search warrant.
I. Relevant Facts
A. The Search Warrant
In October 2018, the People applied, pursuant to CPL article 690, for a warrant to search the historical CSLI and call detail information relating to the defendant's cellular telephone number and his wife's cellular telephone number for "the period of October 1, 2016 at 0001 EDT, to December 7, 2016, at 2359 EDT" (emphasis in original). T-Mobile, the service provider for both cellular telephone numbers, with offices at "4 Sylvan Way, Parsippany, NJ 07054," maintained the records sought by the People.
In support of the application for the search warrant, an assistant district attorney (hereinafter the prosecutor) proffered an affidavit wherein she explained that this information was "relevant and material" to the ongoing criminal investigation, including the defendant's "whereabouts before, during, and after" the incident. According to the prosecutor, the defendant's wife had informed the prosecutor that "she was present and saw first-hand" the defendant stab the victim multiple times on November 9, 2016. Further, in the affidavit, the prosecutor averred that both the defendant's wife and the victim had identified the defendant as the perpetrator. The prosecutor added that she was informed by the defendant's wife that she was "communicating with [the defendant] at the time of the stabbing, by calling [the] defendant [on her cellular telephone] and receiving calls from [the defendant] that originated from the [defendant's cellular telephone]."
In support of the search warrant application, on October 5, 2018, the prosecutor appeared before a Justice of the Supreme Court, Kings County. At that time, the prosecutor stated to the court that "[b]ased on the review of the call records I have for those two numbers, . . . they were the numbers that were in use by each of those parties on the day of the incident and the days leading up to the incident." The Justice determined that there was "probable cause for the records and data sought concerning" the two cellular telephone numbers because they were "material and necessary to assist in an ongoing criminal investigation." Thus, the Justice granted the People's application for the search warrant. The search warrant provided, in relevant part: "ORDERED that this Warrant shall be executed by [the prosecutor] by serving this Warrant on T-Mobile at 4 Sylvan Way, Parsippany, NJ 07054."
Consistent therewith, the search warrant was "served on T-Mobile via fax on October 5, 2018." On November 5, 2018, T-Mobile provided the data to the prosecutor. On November 7, 2018, the prosecutor disclosed the same to defense counsel.
B. The Defendant's Motion to Controvert the Search Warrant
The defendant moved on several grounds to controvert the search warrant and to suppress evidence seized in the execution thereof. The defendant contended, inter alia, that the search warrant was jurisdictionally defective because it authorized a search outside of New York State. The People countered that the warrant was properly executed in New York when they sent the warrant to T-Mobile "using a fax machine located in Kings County."
In an order dated January 31, 2019, the Supreme Court denied the defendant's motion. With regard to the defendant's contention that the warrant was jurisdictionally defective, the court concluded, "because the warrant was faxed from the Kings County District Attorney's Office, located in Brooklyn, in New York, the warrant was executed in New York and served in a manner which T-Mobile allows."
C. The Jury Trial
The matter proceeded to a jury trial, which took place over a period of 10 days. At the trial, the People presented evidence, including video footage of the incident as well as the testimony of the defendant's wife, the victim, medical personnel, law enforcement officials, and an "intelligence analyst" employed by the People.
The defendant's wife testified that she and the defendant had two children together and were married on August 6, 2013. In 2015, she and the defendant had a verbal argument, at which time the defendant choked her. After that incident, the defendant's wife and the children moved to a family shelter. She would not tell the defendant the address of the shelter.
On September 10, 2016, the defendant's wife met the victim, and they started dating on September 27, 2016. On October 26, 2016, the defendant's wife and the victim encountered the defendant. The defendant grabbed his wife and demanded that she go home with him. The victim told the defendant, "don't talk to her like that, you don't grab her like that." The defendant replied, "that's between me and my wife, you need to stay out of this." The following day, the defendant left his wife a message blaming the victim for "[e]verything" and stating, "[w]hen the bottle gets full, [*2]I swear it is going to . . . blow up in his ass."
On October 30, 2016, the defendant's wife and the victim were in the victim's car when they again encountered the defendant. At that time, the defendant hit the front passenger and driver side windows of the victim's car.
Between November 3, 2016, and November 6, 2016, the defendant's wife received multiple text messages from the defendant. In one such text message, the defendant stated, "he will get what he deserves one day. The movies is [sic] just start[ing]." The People presented evidence relating to cellular phone records of the defendant and his wife from September 2016 through November 10, 2016. According to that evidence, from November 1, 2016, through November 10, 2016, the defendant called his wife 275 times and his wife called him 26 times.
On November 9, 2016, at approximately 8:20 p.m., the defendant approached the victim and stated, "you're going to die, I'm going to kill you," as he repeatedly stabbed the victim's abdomen, face, and hand. He told his wife, "you're next."
The defendant's wife called 911. Thereafter, the police and emergency medical personnel arrived at the scene, where they observed that the victim's small intestine was "outside of his body" and that the victim was coughing blood. In addition to the evisceration of his small intestine, the victim suffered lacerations to his lip and right hand. The victim was transported to the hospital, where he underwent surgery and remained hospitalized for 13 days.
The jury found the defendant guilty of assault in the first degree. On July 12, 2019, the Supreme Court sentenced the defendant to a determinate term of imprisonment of 10 years, to be followed by 5 years of postrelease supervision.
II. Execution of the Search Warrant was Not Jurisdictionally Defective
The search warrant at issue in this case provided that it "shall be executed by [the prosecutor] by serving this Warrant on T-Mobile at 4 Sylvan Way, Parsippany, NJ 07054 and that T-Mobile release to [the prosecutor]" certain CSLI and call detail information regarding the defendant's cellular phone number and his wife's cellular phone number for the period of October 1, 2016, to December 7, 2016.
The defendant contends that the search warrant was improperly executed outside of New York State in violation of the New York Constitution and CPL 690.20(1) because the warrant was executed at T-Mobile's corporate office in New Jersey. The People contend that the warrant was properly executed in New York State when they faxed the warrant from the District Attorney's office in Brooklyn to T-Mobile's corporate office in New Jersey. We agree with the People.
In Carpenter v United States (585 US ___, ___, ___, 138 S Ct 2206, 2217, 2221), the United States Supreme Court held that because "an individual maintains a legitimate expectation of privacy in the record of [their] physical movements as captured through CSLI," "the [g]overnment must generally obtain a warrant supported by probable cause before acquiring such records."
In Carpenter, the government obtained a warrant pursuant to the Federal Stored Communications Act (18 USC § 2701 et seq.; hereinafter SCA), which provides that a "governmental entity may require the disclosure by a provider of electronic communication service of the contents of a wire or electronic communication, that is in electronic storage in an electronic communications system" pursuant to a warrant issued using, inter alia, "State warrant procedures" (id. § 2703[a]). A warrant issued pursuant to the SCA compels a provider of electronic communication and remote computing services "to compile and turn over digital data under its control, and the presence of a law enforcement officer is not required for service or execution of the warrant" (Matter of 381 Search Warrants Directed to Facebook, Inc. [New York County Dist. Attorney's Off.], 29 NY3d 231, 243-244; see 18 USC 2703[g]). The presence of a law enforcement officer is not required for SCA warrants because the "service provider is more likely to be better equipped to access and conduct a search of its own digital information than law enforcement personnel, and the data may be stored in different locations. Thus, the framework of execution for SCA warrants ensures efficiency and minimizes intrusion into the provider's business while promoting and protecting legitimate law enforcement interests in criminal investigation" (Matter of 381 Search Warrants Directed to Facebook, Inc. [New York County Dist. Attorney's Off.], 29 NY3d at 244 [citation omitted]).
The New York Constitution, article VI, § 1(c) provides: "All processes, warrants and other mandates of the court of appeals, the supreme court including the appellate divisions thereof, the court of claims, the county court, the surrogate's court and the family court may be served and executed in any part of the state. All processes, warrants and other mandates of the courts or court [*3]of civil and criminal jurisdiction of the city of New York may, subject to such limitation as may be prescribed by the legislature, be served and executed in any part of the state" (emphasis added). CPL 690.20(1) provides that a "search warrant issued by a district court, the New York City criminal court or a superior court judge sitting as a local criminal court may be executed pursuant to its terms anywhere in the state" (emphasis added).
"When resolving a question of statutory interpretation, the primary consideration is to ascertain and give effect to the legislature's intent. The starting point in determining legislative intent is to give effect to the plain language of the statute itself—the clearest indicator of legislative intent" (People v Schneider, 37 NY3d 187, 196 [citation and internal quotation marks omitted]).
In People v Schneider (37 NY3d at 189), the Court of Appeals was presented with a similar issue, i.e., whether eavesdropping warrants are "executed" in the location where the eavesdropped communications are made, or rather, in the location where such communications are intercepted by law enforcement officers. CPL 700.05(4) provides that when a justice issues an eavesdropping warrant, "such warrant may be executed and such oral or wire communications may be intercepted anywhere in the state." In Schneider, the Court held that eavesdropping warrants for the defendant's cellular phones, which were not physically present in New York, were executed in Kings County, which was the location where the law enforcement officers were when they intercepted the communications (see People v Schneider, 37 NY3d at 189). The Court explained that although the term "executed" is not defined in CPL article 700, a plain reading of CPL 700.05(4) demonstrates that "execution" of a warrant "depends on the action of authorized law enforcement officers vis-à-vis the communications and does not depend on the location of a target, the target's communication devices or the participants engaged in the call" (People v Schneider, 37 NY3d at 196). Accordingly, "execution of the warrants occurs at the point where authorized law enforcement intentionally overhears or records the human voice contained in telephonic communications and intentionally accesses the transferred signals or data in the electronic communications" (id. at 197).
Just as the term "executed" is not defined in CPL article 700, it is also not defined in the New York Constitution or CPL article 690. Nevertheless, in determining where a warrant is "executed" within the meaning of CPL 700.05(4), the Court of Appeals looked to where the actions of the law enforcement officers took place. It follows that in determining where a search warrant is "executed" within the meaning of the New York Constitution and CPL 690.20(1), we similarly must look to where the actions of the law enforcement officers took place. Here, the action of the subject law enforcement officer—the act of faxing the search warrant to T-Mobile—took place in New York (see People v Williams, 79 Misc 3d 809, 818-819 [Sup Ct, Albany County]).
The "core" of the Fourth Amendment is to "protect the right of privacy from arbitrary police intrusion" (People v Nieves, 36 NY2d 396, 401 [internal quotation marks omitted]). A service provider accessing and retrieving its subscribers' CSLI and call detail information located in the service provider's own business records does not implicate its subscribers' right to privacy protected by the Fourth Amendment (see United States v Miller, 425 US 435, 442). It is only when agents of the government act that the subscribers' Fourth Amendment rights are implicated. Since the actions of the government's agents that encroached on the defendant's Fourth Amendment rights—the faxing of the warrant—took place in New York, we conclude that this is where the search warrant was executed. Thus, there was no violation of the New York Constitution or CPL 690.20(1).
Further supporting this conclusion is the "'principle that we must interpret a statute so as to avoid an unreasonable or absurd application of the law'" (People v Schneider, 37 NY3d at 196, quoting People v Garson, 6 NY3d 604, 614 [internal quotation marks omitted]). If we were to adopt the defendant's position, police in this State would never be able to execute search warrants seeking data from cellular service providers whose records are located out of state. We will not apply such an unreasonable or absurd interpretation.
Accordingly, consistent with the cogent holding of the Court of Appeals in People v Schneider and guided by the principles of statutory construction, we reject the defendant's contention that the search warrant was not executed within the state.
III. Remaining Contentions are Without Merit
Contrary to the defendant's contention, the search warrant particularly described the items to be seized (see People v Nieves, 36 NY2d at 401) and was not overly broad or ambiguous (see People v Fernandez, 210 AD3d 693, 694; People v Crupi, 172 AD3d 898, 899).
In addition, the Supreme Court providently exercised its discretion in permitting an "intelligence analyst" employed by the People to give expert testimony with respect to CSLI data [*4]analysis and mapping after it was established that the witness possessed the requisite training and experience to qualify as an expert (see People v Maldonado, 188 AD3d 1257, 1259; People v Littlejohn, 112 AD3d 67, 73).
The sentence imposed was not excessive (see People v Suitte, 90 AD2d 80).
The defendant's remaining contentions are without merit.
Accordingly, the judgment is affirmed.
MALTESE, VOUTSINAS and LOVE, JJ., concur.
ORDERED that the judgment is affirmed.
ENTER:
Darrell M. Joseph
Acting Clerk of the Court

Footnotes

Footnote 1:Jon Bortin et al., Cell phone statistics 2024, Consumer Affairs, Sept. 28, 2023, https://www.consumeraffairs.com/cell_phones/cell-phone-statistics.html [last acccessed Jan. 31, 2024]